### No. 11,713.

WATKINS BANKING COMPANY vs. LOUISIANA LUMBER COMPANY, LIMITED.

#### ON MOTION TO DISMISS.

The order of appeal granted was the court's order, and if erroneous, the error was not imputable to the appellants.   The order as granted by the court was made under Sec. 4 of Act No. 45 of 1870, E. S., authorizing the District Judge to make a change in the "return day" under certain circumstances.   The appeal was made returnable at *New Orleans* on the second Monday of January, 1895, and the transcript was filed at that place at that date.   Before that date sessions of the Supreme Court at *Opelousas* were abolished, and all appeals were made returna-ble at New Orleans by *Acts Nos. 12 and 69 of 1894* ` The transcript was properly filed at that place.   An erroneous designation by the District Court of the *place* where an appeal shall be returned does not vitiate the order and author-ize a dismissal of an appeal, if the record be filed at the proper place within the time legally fixed by the court.` The *places* at which appeals in civil cases are returnable are fixed by the law itself.

Banking Co. vs. Lumber Co.

## ON THE MERITS.

Where defendant in a suit reconvened against plaintiff for an amount within the appellate jurisdiction of the Supreme Court, and its reconventional demand having been rejected, it appealed to that court, its appeal did not carry with it for review to that tribunal the judgment which plaintiff in the suit had obtained against defendant, and which, in itself, was below the limit of its jurisdiction. On such an appeal the issues determined by the judgment on the original demand must be held closed in ascertaining the rights of parties and to have been correctly rendered.

Where upon suit being instituted for the recovery of damages alleged to have been incurred through writs of sequestration and attachment illegally issued, it is shown that by judgment standing unreversed, although the attachment was dissolved the sequestration was maintained, that the two writs were simultaneously executed and covered the same property, and that the seizure under both writs was released at the same time under a forthcoming bond, there is no basis for a judgment for the plaintiff—the *illegality of the attachment* is met at every step by the *legality of the sequestration*. Plaintiff, however, is entitled to attorney's fees for setting aside the attachment.

APPEAL from the Twelfth Judicial District Court, Parish of Calcasieu. *Schwing, J., ad hoc.*

---

Plaintiffs sued the defendant for two thousand dollars. They accompanied their demand for a personal judgment by an application for a writ of sequestration, based upon the claim that the amount due them was supported by privilege on the property of the defendants, and for a writ of attachment, upon the ground that defendants were about leaving the State permanently, without there being a possibility, in the ordinary course of judicial proceedings, of obtaining or executing judgment against them previous to departure; also, that they had already disposed of part of the property on which they claimed privilege, and that they feared they would dispose of the balance during the pendency of the suit; also, that defendants had disposed of their property, or a part of the same, to defraud their creditors, or give an undue preference to some of them over them. Orders for sequestration and attachment having been granted, writs of sequestration and attachment issued, under which the sheriff seized certain property. Two motions were made by the defendants—one to dissolve the sequestration, the other to dissolve the attachment. The motion to dissolve the sequestration was overruled; that to dissolve the attachment was sustained. Defendants filed an answer and pleaded in reconvention a claim of twenty-five thousand dollars damages as resulting from the writs of sequestra-

tion and attachment which had issued, claiming that they were unfounded, illegal and malicious.

The District Court rendered judgment in favor of plaintiffs against defendants for two thousand dollars, recognizing as legal and maintaining the writ of sequestration, and making it executory to the amount of the judgment on all the property sequestered, and ordering it to be sold to pay plaintiffs' claim, and rejecting defendants' reconventional demand. Defendants appealed. Plaintiffs moved to dismiss the appeal on the ground that at the time it was granted, appeals to the Supreme Court from Calcasieu parish were governed bp Act No. 69 of 1884, and by that act they were returnable at Opelousas on the first Monday of July of each year, while by the order of appeal in this particular case the appeal was illegally made returnable at New Orleans on the second Monday of January, 1895, and that this improper fixing of the return was imputable to appellants.

------

*D. B. Gorham* and *T. T. Taylor* for Plaintiffs, Appellees.

------

*A. P. Pujo* for Defendants, Appellants.

------

## On Motion to Dismiss Appeal.

The opinion of the court was delivered by

NICHOLLS, C. J. The reasons assigned for dismissal of the appeal are thus stated: " Appellant asked for and obtained an order of appeal June 25, 1894, returnable at the city of New Orleans on the second Monday of January, 1895, whilst the appeal was legally returnable at Opelousas on the first Monday of July, 1894, under Act No. 69 of 1884, which was then in full force. Two regular terms of the District Court for Calcasieu—one in September, 1894, and one in November, 1894—were held since said improper order and return day was obtained and appellants made no effort to perfect their appeal until the 10th of November, 1894, when they filed their appeal bond. They had ample time and opportunity to have had the improper order of appeal and return day corrected, even after the adjournment of the Opelousas term, and have said appeal made returnable at New Orleans, on the second Monday of November, 1894, as provided for by Act No. 69 of 1894, approved July 6, 1894, and

which was in force at the time the appeal was perfected. The grant-
ing of the improper order of appeal, and the fixing of said improper
return day were made according to the motion therefor by the appel-
lants, and the order is attributable to their *laches* and negligence,
and not to the court.

The order of appeal (granted June 25, 1894) reads as follows:

"Defendants' counsel moves for an appeal, both devolutive and
suspensive, from a judgment rendered against defendant company.
It appearing to the court that it is a physical impossibility for the
clerk to prepare a transcript in the case in time for the meeting of
the Supreme Court in July, at Opelousas, the defendants are granted
appeals as moved for, returnable to the Supreme Court at New Or-
leans, Louisiana, on the second Monday in January, 1895, upon
defendants furnishing bond for devolutive appeal in the sum of two
hundred and fifty dollars, and for the suspensive appeal in the sum
of five hundred dollars."

Under Act No. 72 of 1884, appeals to the Supreme Court from the
parish of Calcasieu were returnable to the session of that court at
Opelousas on the *first Monday of July*.

On the *20th of June, 1894*, Act No. 12 of the General Assembly of
Louisiana, approved June 18, 1894, was promulgated at Baton Rouge.
By that act appeals from the parish of Calcasieu were made return-
able to the Supreme Court at New Orleans on the second Monday of
January.

The motion for and o der for appeal in this case was made
on the *25th of June, 1894*, at which time, though Act No. 12 had
been officially published at the capitol at Baton Rouge, it had
not yet become officially promulgated in Calcasieu. The con-
dition of the record was such at the time of the order of
appeal as to render it impossible to complete and file the tran-
script at the Opelousas term of the Supreme Court in July, 1894.
The law-maker, anticipating the possibility of such a contin-
gency happening, had, by Sec. 4 of Act No. 45 of 1870, granted
authority to the District Judge to make a change in the return
day. It provided that in all cases of appeal the judge of the court
from which it is taken shall make the appeal returnable to the Su-
preme Court at the next return day for appeals from the parish, if
there be time enough after granting it to give the notice required by
law and prepare the record; if not, then he shall fix the return day

for some day within the next term after the appeal is granted, allowing sufficient time to give the citation required by law and to prepare the record, if sufficient time within the term shall remain—if not, then he shall fix the return day for the following term.''

In the case at bar the judge fixed the return day as the second Monday of January, 1895.   It is not only not suggested that the transcript of appeal could have been made out at any earlier day, but we find in the record, under date *of November 10, 1894*, a certificate of the District Clerk to the effect that he had not been able up to that date to prepare the transcript, and that he would not be able to do so until the second Monday of January, 1895 (the return day fixed by the District Court).   The transcript was filed at that time. Appellee has overlooked the fact that this discretionary power of the judge refers to the *dates* of return, and that the *places* where appeals in civil cases are returnable are fixed, not by the judge but by the *law*.   The designation of New Orleans by the judge in his order of 25th June as the place of return would not have authorized the dismissal of the appeal, if appellant had duly filed the transcript *at Opelousas*, had that been the legal *place for returns from Calcasieu, on the second Monday of January, 1895*, though appellant might have lost his appeal under such circumstances had he followed the judge's improper (on that hypothesis) designation of *place, and filed the record at New Orleans*.   The appeal *as to place* would have been dismissed.   When the date for filing the appeal fixed by the judge was reached, appellant found New Orleans designated by Act No. 69 of 1894 as the place for appeals from Calcasieu, and he properly filed the record at that place.   The provision in Sec. 3 of Act No. 69 of 1894 that ''all appeals *pending* in the Supreme Court on the *first day of August, 1894*, and which have been made returnable at the cities of Monroe, Opelousas or Shreveport, are hereby transferred to the city of New Orleans, *there to be tried on their respective return days* as fixed by Sec. 2 of this act,'' did not make this particular case (if it fell under that classification) returnable and triable at New Orleans on the second Monday of November, 1894 (which was the first return day after the passage of that act for returns from Calcasieu), though New Orleans was made thereby the place of return.   The law was not intended to apply as to the time for the return to a case for which a special *date* of *return* had been fixed under the peculiar condition of its record by the District Judge under his special grant

of authority. The judge's order as to time remained unchanged by the change of the law. Though no use was made of the same in this court on the second Monday of November, 1894, the first day fixed under the last law for appeals from Calcasieu (and under our views, as expressed, there was no necessity for such use at that time), the certificate of the clerk, as we have said, shows that he had been unable up to that time to complete the record in the case, and appellant would have been entitled to an extension of time had that been its actual return day.

We are inclined to think that the law-maker, in referring in the closing portion of Sec. 3 of Act No. 69 of 1894 to appeals *granted* to the Supreme Court "*by an order of any court prior to the 1st August, 1894*, from parishes from which appeals are *made returnable to New Orleans under existing laws*" (italics ours), and declaring that they should not be in any manner affected by the provisions of the last act, but should be returned on their respective return days, as fixed by existing laws, had in view *Act No. 12 of 1894* as a then "existing law," although it had not yet, by reason of the date of its promulgation, become operative in Calcasieu. Appeals falling under that act were to be read out of Act No. 69. The date of return of appeals for Calcasieu, under the Act No. 12, was the second Monday of January, 1895, the date fixed for the return of the present appeal by the District Court.

Independently of what has been said, we are of the opinion that had there been error in the return it was not imputable to appellant. As we read the order of appeal, appellant's motion went no further than to apply for an appeal, suspensive or devolutive, from the judgment. The fixing of the date and place of appeal, and the assignment of reasons for so doing, was the act of the court, for which appellant should not be made to suffer. State vs. Dellwood, 33 An. 1230.

The motion to dismiss is overruled.

## ON THE MERITS.

At the threshold of the case we are met by the question as to what the issues legally before us are. Defendant's counsel seem to be of the opinion that their appeal has brought up both plaintiffs' demand and the judgment thereon, and their reconventional demand and the judgment thereon. Plaintiffs' demand, in itself, is not within our ap-

pellate jurisdiction. It has not been brought within that jurisdiction by the reconventional demand. This has been repeatedly decided. Gove vs. Kendig, 3 Rob. 387; Hanna vs. Bartlette, 10 Rob. 438; *Ex parte* Goodwin and another, 11 Rob. 12; Dean vs. Clarke, 5 An. 105; Tardos vs. Ship Toulon, 14 An. 430; Overton vs. Simon, 10 An. 685; Osborn vs. Moore, 12 An. 714; Vincent vs. Schweitzer, 17 An. 199; Pesant vs. Heartt, 22 An. 292; Lamorere vs. Avery, 32 An. 1010; Stevenson vs. Whitney, 33 An. 658.

The defendant has availed himself of the provisions of Act No. 50 of 1886, authorizing a defendant to demand by way of reconvention from the plaintiff the damages which he may have sustained by an illegal resort to the conservatory writs issued in the case. Such a course may, in some cases, be exceedingly advantageous, but in suits where the main demand as to appellate jurisdiction would be in one court and the reconventional demand in another, defendants may be placed at great disadvantage. For the purposes of the present appeal we are not at liberty to deal with plaintiffs' judgment on their demand otherwise than as correct in every particular. The case, therefore, stands before us with plaintiffs as the judgment creditor of the defendants for two thousand dollars under a judgment "recognizing as legal and maintaining the sequestration which he caused to be issued in the case, and making it executory to the amount of the judgment on all and singular the lumber sequestered and ordering that the same be seized and sold to pay plaintiffs' demand and all costs of sequestration." Inquiry as to the legality of the sequestration and its scope is by this judgment cut off. If this be true, then the case is left as one wherein plaintiffs with a just claim for two thousand dollars against defendants have properly sued out and executed a writ of sequestration, but have improperly sued out and executed a writ of attachment for the same debt. The two writs seem apparently to have issued at the same time, to have been executed on the same property, and also to have been bonded at the same time, so that even had the plaintiffs not caused the attachment to issue the property would have been taken into the hands of the sheriff out of that of the defendants, under what, as matters stand, we must hold to have been a legally issued writ of sequestration. The only act, therefore, from which the defendants could claim damage and injury, would rest in the *fact of the issuing* of *double writs*. Unquestionably the writ of attachment issued wrongfully. That fact

was decided adversely to plaintiffs in their own case, and that question rests just where the judgment left it. We do not understand that defendants' appeal from the judgment rendered adversely to them on the reconventional demand brings up for review here the action of the court dissolving the attachment. Defendants went into the trial of their reconventional demand with that issue excluded and as an issue already disposed of, and they went into trial solely upon the question whether or not as the result of that illegal attachment they had suffered damage and injury, and if so, what it was, and to what extent it had been suffered. They occupy no different position in this particular regard than if they had not reconvened, but had, just after plaintiffs' suit had been decided, and decided just as it was, brought a direct suit for damages for an illegal attachment. Had such a course been followed, the defendants in such a case could not have collaterally attacked the judgment dissolving the attachment, and defendants in this reconvention can not do so here.

If the sequestration taken out had been executed on property other and different from that which was seized under the writ of attachment, and plaintiffs' judgment, maintaining the sequestration, had only extended to such property, matters would have been left free and open to dispute as to the attachment and its effects and consequences, but the attachment seizure, as we have seen, was no broader, either as to time or property, than the sequestration seizure or divestiture of possession, and the judgment covers and maintains the sequestration on the whole property sequestered. There is no inventory in the transcript of the property seized, but the appraisements which were made and the bonding which took place show that both writs were executed on the same property. Under such circumstances, we know of no process by which we could come to adjudge damages to the plaintiffs and discriminate between the effects of the sequestration and those of the attachment. The illegality of the attachment would be met at every step by the legality of the sequestration.

In one respect defendants are entitled to relief. They were entitled to have the attachment set aside if illegally issued. They employed an attorney for that purpose who succeeded in having this done. It is admitted that his services were fairly and legally worth two hundred and fifty dollars, and to this amount defendants were entitled to judgment in the lower court.

For the reasons herein assigned, it is hereby ordered, adjudged and decreed that the verdict of the jury, rendered in this case, rejecting defendants' reconventional demand, be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that the defendants do have judgment upon their reconventional demand against the plaintiffs, the Watkins Banking Company, for the sum of two hundred and fifty dollars. It is further ordered that plaintiffs and appellees herein pay the costs of the reconventional demand in both courts.