**NORTHWESTERN BELL TELEPHONE CO. v. HILTON. Atty. Gen., et al.**

**TRI-STATE TELEPHONE & TELEGRAPH CO. v. SAME.**

(District Court, D. Minnesota, Third Division.   March 15-17, 1921.)

On Motion to Stay Proceedings.

1. **Courts ☚═506—Interlocutory injunction not denied by federal court because of pending action in state court, when stay in that court not as broad as relief sought in federal court.**

Under Judicial Code, § 266 (Comp. St. § 1243), proceedings for an injunction to restrain the enforcement of state statutes or administrative orders will only be stayed because of the pendency of an action in the state court to enforce such statute or order, when the action in the state court is such that the same issues can be framed and the same questions considered and decided as are raised in the federal court, and the temporary relief granted by the stay in the state court must be of as broad a scope as that asked in the federal court; and hence proceedings by telephone companies to enjoin the enforcement of existing rates could not be stayed, where the stay granted by the state court did not suspend an order of the Railroad and Warehouse Commission denying increased rates, and a state statute forbidding the charging of different rates than those on file with the commission.

On Motion to Dismiss.

2. **Courts ☚═299—In suit to enjoin enforcement of telephone rates, complaint held to state cause of action within jurisdiction of federal court.**

In suits by telephone companies to enjoin state officials from enforcing existing telephone rates and an order of the state Railroad and Warehouse Commission denying an increase of rates, a company alleging diversity of citizenship, and that more than $3,000 was involved, and that the order denying an increase of rates would deprive the company of its property without due process of law, contrary to Const. Amend. 14, § 1, that the existing schedule was noncompensatory and confiscatory, and that, if the company disregarded the order and the existing schedule, it would be subject to criminal prosecution and punishment by fine or imprisonment, on its face stated a cause of action within the jurisdiction of the federal court.

3. **Courts ☚═299—Jurisdiction of federal court determined from plaintiff's statement.**

The jurisdiction of a federal court is to be determined on the statement by plaintiff himself in his complaint.

4. **Telegraphs and telephones ☚═33(1)—Commission's investigation of rates and companies' applications for temporary increases held distinct proceedings.**

Where a state Railroad and Warehouse Commission commenced an investigation of telephone rates on its own initiative, and before completion of the investigation telephone companies filed applications for increased rates temporarily, the two proceedings were independent, and relief in the subordinate proceeding need not await relief in the main proceeding, nor need the relief in the main proceeding depend on whether the relief in the subordinate proceeding was granted or denied.

5. **Courts ☚═493(3)—Notwithstanding provision for appeal from order of commission, telephone company held authorized to resort to federal court.**

Under Laws Minn. 1915, c. 152, as amended by Laws 1919, c. 183, authorizing the district court to modify final orders of the Railroad and Warehouse Commission fixing telephone rates and charges, if unreasonable or unlawful, and preventing the order of the commission from be-

coming final until decision of the appeal to the district court, the district court has only judicial power, and when an order of the commission was made the legislative stage had come to an end, and the judicial stage had been reached, and a telephone company, whose application for increased rates was denied, might resort to the federal District Court by suit for injunction, instead of resorting to the state district court.

**6. Public service commissions ☜19½, New, vol. 12A Key-No. Series—Telephone companies held entitled to enjoin enforcement of old rates, pending investigation before commission.**

Where a state Railroad and Warehouse Commission commenced an investigation of telephone rates on its own initiative, pending which telephone companies made applications for temporary increases in rates, which were denied by the commission, the telephone companies could sue in a federal court to enjoin enforcement of the order denying temporary increases, though the main proceeding was still pending before the commission, where it was likely to continue for a very considerable period of time.

On Motion for Restraining Order.

**7. Telegraphs and telephones ☜33 (1)—Restraining order permitting charging of increased rates granted, pending application for interlocutory injunction.**

Pending an application for an interlocutory injunction against the enforcement by state officials of existing telephone rates and an order of a state commission denying temporary increases, where it appears that the existing rates are confiscatory, that the companies have been trying for several months to get temporary relief, and that every day's delay is important and perhaps vital, and it cannot be told when the application for an interlocutory injunction can be heard by three judges as required by law, a temporary restraining order, granting an increase in rates until the hearing of such application, will be granted, on conditions protecting customers in case it is finally determined that the increase ought not to have been granted.

In Equity. Suits by the Northwestern Bell Telephone Company and by the Tri-State Telephone & Telegraph Company against Clifford L. Hilton Attorney General of Minnesota, and others. On motions to stay proceedings, to dismiss, and for a restraining order, and on application for an interlocutory injunction. Motions to stay proceedings and to dismiss denied, and motions for restraining order and applications for interlocutory injunctions granted.

Edmund A. Prendergast, of Minneapolis, Minn., and O'Brien, Young. Stone & Horn, of St. Paul, Minn., for plaintiff Northwestern Bell Telephone Co.

Clarence B. Randall and O'Brien, Young, Stone & Horn, all of St. Paul, Minn., for plaintiff Tri-State Telephone & Telegraph Co.

Clifford L. Hilton, Atty. Gen., and Henry C. Flannery, Asst. Atty. Gen., for defendants.

On Motion to Stay Proceedings.

BOOTH, District Judge. [1] This is a motion to stay the proceedings in this court, under section 266 of the Judicial Code (Comp. St. § 1243), based upon an action started in the state court of Ramsey county.

It appears that in 1915 or 1916 a proceeding was started before the Railroad and Warehouse Commission to investigate and determine a basis for reasonable rates to be charged by the telephone companies, and evidence was introduced as early as 1918 and as late as November, 1920; that up to the present time no evidence has been introduced on behalf of the state; that about November, 1920, a collateral inquiry was injected into this main proceeding by the telephone companies, in the way of application for increased rates temporarily; that that collateral inquiry was taken up and pursued by the Railroad and Warehouse Commission, and that an order was entered, on February 9, 1921, denying the application; that thereupon suits were brought in this court by the telephone companies, seeking to enjoin and restrain the Attorney General and the Railroad and Warehouse Commission from enforcing the order entered February 9, 1921, or from interfering with an attempt on the part of the telephone companies to increase their present rates. The matter is now pending before this court on a motion for a temporary restraining order, pending a hearing before an enlarged court of three judges for preliminary injunction. While that motion is pending here, and before a temporary restraining order has been issued, action is started in the state court of Ramsey county, asking for a mandatory injunction to compel the telephone companies to respect and abide by the order of the Railroad and Warehouse Commission of February 9, 1921, and also to respect and obey rates theretofore in force.

Section 266 of the Judicial Code provides:

"That if before the final hearing of such application [application for interlocutory injunction] a suit shall have been brought in a court of the state having jurisdiction thereof under the laws of such state, to enforce such statute or order, accompanied by a stay in such state court of proceedings under such statute or order pending the determination of such suit by such state court, all proceedings in any court of the United States to restrain the execution of such statute or order shall be stayed pending the final determination of such suit in the courts of the state."

The language of that provision in section 266 evidently was framed more with a view to a new order that might be made, or a new statute that might be passed, rather than to an old statute that had already been in force for some time, or an old order that had been made and continued in force, and the purpose of the statute undoubtedly was that, when such new order was made or such new statute passed, and action was taken by the public utility to restrain the execution and enforcement of the statute and the order, a preliminary injunction might issue, if the facts warranted it, pending determination of the suit, as to whether such statute or order was unconstitutional and confiscatory. But if, while such a suit was pending in the federal court to obtain a preliminary injunction, action was commenced in the state court for the purpose of enforcing the new statute or the new order, and a stay of proceedings entered in the state court, staying the enforcement of the new statute or the new order, pending the suit, then the proceedings in the United States court would be stayed until the suit in the state court had terminated.

In the present instance there is no new statute which has been passed, and which is attacked; but the order which has been attacked is the order of February 9, 1921, by the Railroad and Warehouse Commission, and that order refused the application for increased rates, and determined that the present rates should remain in force and effect. That order must be read in connection with the statute then in force and now in force. Section 6 of chapter 152, Laws Minn. 1915, known as the Telephone Law (Gen. Stat. Minn. Supp. 1917, § 4623—6), reads that—

"It shall be unlawful for any telephone company to collect or receive a greater or less rate or charge for any intrastate service rendered by it than the rate or charge named in the schedules on file with the commission, and no new rate shall take effect till the date named by the commission, which shall not be less than ten days after it is filed."

The order and the statute must be connected together, must be considered together, and are attacked, as I construe the amended bill of complaint, in each of these suits now pending here. Now, when action is taken in the state court to cause a stay of proceedings in the federal court, the meaning of section 266, as I construe it, is that that action must be such in the state court that the same issues can be framed and the same questions considered and decided in the state court as have been raised by the pleadings in the federal court, and pending the determination of that suit in the state court the temporary relief that must be granted by the state court in a stay order must be of as broad a scope as the temporary relief which is asked in the federal court, where the suits have already been started.

It may be true that the issues raised in the state court, in this mandatory injunction suit, may be so framed as to raise all of the questions that are raised in the suits here in this court. I say that may be the case. I am not clear in my mind whether that is the case, but it might be assumed that it is the case. But, clearly, the stay order which has been entered in the state court is not of the same scope and character as the temporary relief which is demanded in this court on the application for a restraining order, and as demanded in this court on an application for a temporary injunction before the enlarged court of three judges. If counsel for defendants here would state in open court that the stay order in the state court would be construed as meaning that the order of the commission of February 9, 1921, as well as the provisions of section 6, chapter 152, the Telephone Law, would be suspended during the carrying on of the action in the state court, he would have a case brought within section 266 of the Judicial Code; but on the face of the order of the state court it is not of that scope, and since it is not of that scope the provisions of section 266 of the Judicial Code have not been complied with.

I do not know of any adjudicated cases in the reports in reference to this particular matter of actions in state courts staying proceedings in the federal courts under section 266 of the Judicial Code I do remember, however, in the Kansas Natural Gas Company litigation, that a suit was commenced by the St. Joseph Gas Company against the Missouri commission, and it was sought to restrain the commission

from putting into force and effect an order which the commission had made denying the application of the St. Joseph Gas Company to put into effect a schedule of rates. The St. Joseph Gas Company brought suit in the federal court, and made an application for a temporary injunction, and a hearing was set before three judges, at Council Bluffs. Judge Smith, Judge Campbell, of Oklahoma, and I sat. At that hearing counsel for the commission came into the court and stated, and had his papers with him, that an action had been commenced in the state court to determine the validity of the order of the Public Service Commission of Missouri, and that all proceedings under that order also had been stayed by the state court, and upon making that showing the hearing before the three judges was postponed until the determination of that state suit. Now, under the law of Missouri, a public service utility company may file a schedule of rates with the Public Service Commission, and unless the Public Service Commission within a certain specified time takes action to refuse the allowance of that schedule of rates, the rates go into force and effect of their own right; whereas, if within the limited time the Public Service Commission does take action, either on its own initiative or the initiative of some one interested, then an investigation is had and the schedule is suspended.

In the particular case that I referred to the Public Service Commission had taken action to prevent the going into effect of the new schedule of rates filed by the St. Joseph Gas Company, and when the state action was brought and a stay order was entered in the state court, it stayed the proceedings under the order of the Public Service Commission, and, as a result, put into force and effect the new schedule of rates which had been filed by the St. Joseph Gas Company, pending the determination of the suit in the state court. That is the only instance that I know of where the suit in the federal court has been stayed by reason of action taken in the state court; and in that particular case the action was stayed because the suit in the state court was of such character that all of the issues could be determined, and also there was a stay entered whereby the new schedule of rates, which had been prepared and filed with the commission by the St. Joseph Company, was allowed to go into force and effect, pending the litigation in the state court.

It seems to me, therefore, that because the Railroad and Warehouse Commission, defendants in this case, or the state of Minnesota, plaintiff in the state court case, have not completely complied with the provisions of section 266 of the Judicial Code, that the motion for a stay of proceedings in this court in the two suits now pending here must be denied; and it is so ordered.

Mr. Flannery: Exception.

The Court: Exception may be entered in the record.

### On Motion to Dismiss.

This motion to dismiss is based upon several grounds:

First. That the Railroad and Warehouse Commission of the state of Minnesota, by virtue of the provisions of chapter 152, Laws of

Minnesota of 1915, as amended by chapter 183, Laws of Minnesota of 1919, is vested with power and authority to prescribe rates and charges for the intrastate telephone service of the plaintiff company in the state of Minnesota; that said commission has initiated a proceeding wherein it is seeking to determine the fair value of the plaintiff's property, used in furnishing such service, and to prescribe reasonable rates, which will yield a reasonable return upon such value; that the plaintiff has appeared in said proceeding and introduced evidence relating to such matters; that said proceeding is still pending, and the commission has made no final determination thereof, or issued any order therein determining the fair value of plaintiff's property, or prescribing reasonable rates and charges for the reasonable intrastate telephone services of the plaintiff in the state of Minnesota.

Second. That if the order of said commission of February 9, 1921, is a final order determinative of the question of what are reasonable rates and charges for the plaintiff company, then the plaintiff company was secured the right to have such order modified, if unreasonable or unlawful, by the district court of the state of Minnesota, under the provisions of said law, and such order would not have become final or in any way determinative of plaintiff's rights until such appeal had been decided, if such appeal had been taken, and that no such appeal has been taken.

Third. That the legislative function of establishing reasonable rates for the plaintiff company would not have been completed until after the order of such district court upon appeal, if such appeal had been taken.

Fourth. That the suit is premature, and this court without jurisdiction in the premises.

In view of that motion and the grounds, it becomes necessary to consider very briefly the history and present status of this controversy [2, 3] It appears from the record that on July 1, 1916, the companies came under the jurisdiction of the Railroad and Warehouse Commission of the state; that the rates then in force were continued thereafter; that in 1917 the commission began, on its own initiative, a broad investigation as to rates; that either in 1917 or 1918 the taking of evidence began in that investigation; that on July 1, 1919, new rates were established by the federal government, which had taken over for the time being the operation of the telephone lines; that in November, 1920, the companies completed their evidence in the main inquiry, and upon the completion of their evidence initiated themselves, before the Railroad and Warehouse Commission, a subordinate inquiry as to temporary rates to be charged by the companies, pending the determination of the main proceeding; that on February 9, 1921, an order was made by the Railroad and Warehouse Commission denying this increase of temporary rates; that on February 19, 1921, the present suit was started in this court.

The complaint in this suit alleges jurisdiction on two grounds: First, diversity of citizenship and amount of more than $3,000 involved; second, that the controversy arises under the laws and Constitution of the United States. The complaint alleges that prior to

the 1st of January, 1920, a schedule of rates which had theretofore been established by the Railroad and Warehouse Commission was in force, that schedule being shown by an exhibit, Schedule A, attached to the bill of complaint; that the order of February 9, 1921, denying any increase of rates temporarily, and the enforcement of the present Schedule A, will deprive the company of its property without due process of law, contrary to the provisions of the Fourteenth Amendment of the Constitution of the United States; that the present schedule is noncompensatory and confiscatory; that if the company disregards the order of February 9, 1921, and the present schedule of rates, it will be subject to criminal prosecution and to punishment by fine or imprisonment. The prayer of the complaint is that the rates in Schedule A, present rates, be adjudged to be confiscatory; that an injunction against the defendants issue, restraining them from enforcing the rates in Schedule A, and that they also be enjoined and restrained from interfering with the establishing of a proposed schedule, which is set forth as Schedule J; and that the state authorities be restrained from enforcing any penalties against the plaintiff for disregarding the rates in the Schedule A.

On the face of the complaint a cause of action within the jurisdiction of this court is plainly stated, and the jurisdiction of the federal court is to be determined on the statement by the plaintiff himself in his complaint. I think that proposition is too well established to require the citation of any authorities or further discussion of the proposition. But the claim is made by the defendant that the plaintiffs had the right to appeal from the order of February 9, 1921, to the state district court, and until that was done, and the state district court had acted, the legislative stage of the inquiry as to rates had not passed, and the judicial stage had not been reached, and that therefore the present suit is premature. This necessitates a brief examination of the order of February 9, 1921. That order is entitled in both proceedings; that is, in the main broad inquiry before the commission, and also the subordinate inquiry as to temporary rates, which had been initiated by the company.

[4] Those two proceedings, in my judgment, were independent; that is to say, the relief in the subordinate proceeding need not wait relief in the main proceeding, nor need the relief in the main proceeding depend in any way upon whether the relief in the subordinate proceeding was granted or denied. The two proceedings are distinct and separable. The evidence in the subordinate proceeding was ended prior to the entry of the order of February 9, 1921, and that order denying the increase of temporary rates was the end of the matter of temporary increased rates, so far as the Railroad and Warehouse Commission was concerned, on the then pending application.

[5] The state district court, under the laws of Minnesota, as construed by the Supreme Court of the state, could not put itself in the place of the Railroad and Warehouse Commission, and retry the issues and establish new rates. It had no legislative power, but judicial power only; therefore, in my judgment, when the order of February 9, 1921, was made by the Railroad and Warehouse Commission, the

legislative stage had come to an end, and the judicial stage had been reached. That being so, there can be no question but what at that stage the company might resort to the state district court, or to the federal District Court, as it saw fit. It chose the latter forum.

But it is claimed by the defendants that the main proceeding is still pending and undetermined, and that it is not proper for this court to entertain the present suit for that reason. Plaintiffs claim, however, that the main proceeding before the commission has come to an end. This question is not free from doubt in my mind. It may be true that the main proceeding before the commission is ended; but I am not inclined to take that view. I am more inclined to the view that the main proceeding has not come to an end, and is not likely so to do for a long period of time, and my reasons for holding that view are as follows:

First. The majority of the commission, neither in its order nor in the memorandum attached, stated that the main proceeding is ended, nor that it is near its end, and it seems to me that, if either of those things were true, some mention would naturally have been made of the facts.

Second. Commissioner Putnam nowhere states in his memorandum of dissent—and he would have been likely so to state if it were a fact—that the main proceeding was ended, or that it was about to come to an end.

Third. Commissioner Putnam, if he had thought the main proceeding ended, would not have used the following language, found on page 13 of his memorandum of dissent:

"The following table represents my conclusions in this case as to the actual minimum requirements of the company at this time. This table does not represent all that the company legally may be entitled to upon the completion of its entire case."

It seems to me that that plainly is a recognition on the part of Commissioner Putnam that the main proceeding was still pending.

Fourth. Commissioner Putnam, if he thought the main proceeding likely to come to an end, in all probability would not have felt called upon to write the memorandum he did, but would have awaited the final order of the commission.

Fifth. Commissioner Putnam, if he thought the main proceeding likely to end soon, would in all probability not have recommended, as he did, tentative rates for the period of six months. On page 14 of his memorandum he says:

"I would recommend that the company be authorized to file with the commission tentative rates for the services they are rendering; that these rates be checked by the experts of the commission with the data that the commission has now on hand in regard to property values and operating costs by exchanges; that if, from the examination thus made by the experts of the commission, in their judgment the rates are reasonable and adequate, the commission then authorize those rates to become effective as temporary rates for a period not exceeding six months."

It seems to me he would not have used that language if he had thought the main proceeding at an end, or if he had thought it was likely to come to an end in the near future.

Sixth, and finally. If it has taken some two or three years to reach the present point in the main proceeding, viz. the close of the companies' cases, it is hardly reasonable to expect that the end of the whole proceeding is close at hand. The record here discloses that the experts for the Railroad and Warehouse Commission have been gathering data for a year or more, and that evidence will have to be introduced by those experts concerning those data. After that, rebuttal evidence undoubtedly will have to be introduced on the part of the companies. After the evidence is introduced, arguments will have to be made, and finally consideration will have to be given by the commission to the evidence and the arguments, all before they reach a conclusion, and all before the main proceeding comes finally to a close.

[6] The situation then presents itself of a main proceeding likely to continue for a very considerable period of time, and of a subordinate proceeding having reached the judicial stage, and the question arises whether it would be improper for this court to take any action touching a temporary provisional remedy as prayed for in the subordinate proceeding. The case of Wisconsin-Minnesota Light & Power Co. v. Railroad Commission of Wisconsin (D. C.) 267 Fed. 711, has been cited, and I have given that case consideration. It appears in that case that the company itself had initiated proceedings before the Railroad and Warehouse Commission to have a broad inquiry made as to rates charged by the company in some 32 towns or cities. It appeared that the commission, before the bill was filed in the federal court, had granted some emergency relief to the company. It appeared that 3 towns had already been passed upon finally by the commission. It appeared that the bill was then filed by the company in the federal District Court to enjoin the commission from interfering with schedules which the company proposed to put in force and effect, not merely in the 3 towns which had been passed upon finally, but, as I read the decision, in all of the 32 towns which it served. It appeared that the company asked judgment of the federal District Court merely on an apprehension of what the commission might possibly do. There was no claim that there was any arbitrary or capricious action on the part of the commission, and it appeared that the Railroad Commission was still functioning after the company filed the bill in the federal District Court.

Under those circumstances, the federal District Court, being an enlarged court of three judges, in accordance with the provision of section 266 of the Judicial Code, used the following language:

"If, therefore, we assume that the plaintiff in this case invoked the jurisdiction of the state Railroad Commission for the broad purpose of considering and revising its rates as disclosed by itself in the petition filed in July, 1919, it would be anomalous to recognize the constant alternative of resorting to equity merely if because of delay, disappointment in partial determination, or for other considerations, the further prosecution, or the awaiting of the final result, of the commission proceedings was no longer desirable."

And again:

"Taking the broad case made by the plaintiff's bill, it is not that the rates originally fixed are now confiscatory, and that the state, through the de-

fendant commission, adheres to them and refuses to give consideration to the facts recited in the bill; for the plaintiff has availed itself of the jurisdiction furnished by the state to conduct an inquiry into its rates and to award an increase."

### And again:

"Is the plaintiff in the present case disclosing, or attempting to disclose, a denial of, or an aggression upon, its property or property rights by the state, upon the same facts disclosed before the commission or inhering * * * in the rate complained of; and has the state finally denied the plaintiff's right upon the facts so disclosed? This query, so it seems to us, is expressly answered in the negative."

### Finally:

"This conclusion is reached upon consideration of the bill in its broader aspect and purposes, and is not limited to a consideration of the case which might be made upon the narrow facts pertaining to any one or all of the three communities concerning whose rates the commission has made an award. We are taking the situation in its entirety, as the plaintiff professed to present it, both in its application before the defendant commission and in its bill which invokes the interference of the court as against the whole subject of rates rendered for service in the various communities referred to."

Now, it seems to me that the differences between the Wisconsin case and the case at bar are more numerous and of greater import than the points of similarity between the two cases. I am of the opinion that the present situation in the case at bar is to be governed by the principles laid down in the case of Love v. Railroad, by the Circuit Court of Appeals in this circuit, 185 Fed. 321, 107 C. C. A. 403. And in that case the syllabus was written by the court, Judge Sanborn rendering the decision. A portion of the syllabus is as follows:

"It is as much a violation of the Fourteenth Amendment to the Constitution to take the property of a railroad company without just compensation during the process of rate-making as it is after the completion of that process."

My conclusions are:

1. That the court has jurisdiction of the present suit.

2. That the matter of temporary rates before the Railroad and Warehouse Commission reached the judicial stage on the entry of the order of February 9, 1921.

3. That the suit instituted in this court was not premature.

4. That the fact of the pending main proceeding before the commission does not make it improper for this court to entertain the present suit and grant temporary relief, if the facts in the case warrant. Whether the facts do warrant temporary relief, and, if so, to what extent, will be determined at the close of the evidence in both cases.

## On Motion for Restraining Order.

As I have already indicated, I have reached the conclusion that the court has jurisdiction to entertain this suit, and also that the suit itself is not premature, and also that the pendency of the main proceeding before the commission does not necessarily preclude action by the court in this present suit, if the facts warrant.

[7] It is unusual for plaintiffs to ask relief of this kind on an application for restraining order; but the plaintiffs in these cases jus-

tify their action in so doing on the ground of an emergency situation. They claim that the evidence shows that they are each suffering a daily loss in large amounts, under the present rates, and that that daily loss is coupled with the demand on the part of the public and on the part of the Railroad and Warehouse Commission for improved service.

I am not going to attempt to analyze the evidence that has been introduced in this case. I could not do it, and do it satisfactorily, either to myself or counsel, without giving the matter considerably more time than I have been able to devote to it while this case has been here before me; but I have given as close attention as I could to it as it has been introduced, and to the arguments of counsel, as they have been made, and I have from such consideration reached the conclusion that the present rates that are being charged by each of the companies are confiscatory, when they are considered with reference to any fair valuation that may be placed upon the respective properties, when they are considered in reference to reasonable operating expenses, and when they are considered in reference to reasonable amount to be set aside for depreciation-reserve and taxes.

I have also reached the conclusion that the showing here is of such a character that temporary relief should be granted, even pending the investigation that is now going on before the Railroad and Warehouse Commission in the way of a broad inquiry as to valuations and proper and reasonable rates; and in that opinion, that there should be temporary relief, even while that main proceeding is going on, I have the support at least of one of the Railroad and Warehouse Commission, and I do not understanding that the other members of the commission denied that there was need for temporary relief, but based the refusal of such relief on the ground that the present service was inadequate.

As I have already intimated, the record shows that the service has been inadequate, and perhaps still is inadequate, yet the record also shows that the causes of such inadequacy have been of such character that in my judgment temporary relief should not be precluded by reason of the fact of such inadequacy. There is no claim here, and, so far as the record has been called to my attention, nothing in the record that indicates any bad management on the part of either of these companies, or that there was bad faith on the part of either of the companies, or that indicates negligence on the part of either of the companies in carrying on the work of serving the public. Apparently Commissioner Putnam did not think that the inadequate service under all the circumstances should preclude temporary relief, and in the opinion he reached in regard to that matter I concur.

The question is now: Should relief be granted at the present time, or wait until the hearing before the three judges, which will be called under the statute to consider the question of preliminary injunction? Ordinarily I should answer that question by saying that it ought to await the hearing and determination before the three judges. But in this case the companies have been trying to get temporary relief ever since last November, and every day's delay in getting the tem-

porary relief is extremely important, and perhaps vital. Just when the hearing before the three judges can take place we none of us know, although we all hope that it may take place not more than 30 to 60 days hence. But, inasmuch as that is not definitely decided, I think the relief should be afforded by this court on this application for a temporary restraining order, even though the proceeding is somewhat unusual.

The question remains: What should be the relief demanded? That depends upon the showing made here by the respective parties. As I have stated, I have tried to consider this evidence carefully as it has been introduced, and also the arguments of counsel; but, as I have also stated, I shall not undertake to analyze or go over in review these affidavits, or any of them. The relief demanded is an emergency relief, and the decision that is now rendered must be considered as an emergency decision.

I have read very carefully and considered the order of the Railroad and Warehouse Commission, with the memorandum attached by the majority of the board, and also the memorandum attached to that order by Commissioner Putnam. I have considered what he has to say in regard to the various questions that were brought before the commission—the same questions that have been brought before this court. He has had the whole matter before him many days, and doubtless he has given it very careful consideration. From what I have heard here, I think that his conclusions were fully justified, and that the evidence here introduced fully justifies the same conclusions that he has reached. I also think that the figures adopted by him in his recommendation for temporary relief, pending the conclusions of the final, broad hearing, are eminently fair to both sides. I think they are fair to the public, and, under all the circumstances as a measure of temporary relief, I think are fair to the two companies.

I have therefore concluded to adopt the final figures of Commissioner Putnam, in making his recommendation, as a basis for the temporary relief to be afforded in these two cases; and the temporary restraining order granted will be that the defendants are restrained from interfering with a schedule of rates based upon figures used by Commissioner Putnam in making his final recommendations. That relief will be granted upon condition that the companies individually give a bond in a sufficient amount, to be approved by the court, conditioned to reimburse customers the excess over the present rates, in case it is finally determined that this temporary increase ought not to have been granted. The temporary increase will be granted, and restraining order, of course, will be in effect only until the hearing and final determination of the three judges, or until further order of this court. There will be a further condition that the companies each of them keep their accounts in such a way that this excess due to the increased temporary rates paid by each customer can be readily and accurately ascertained. And there will be a third condition, that the companies and each of them forthwith make application to the Railroad and Warehouse Commission for such suggestions, if any, as the

commission may have, as to what can be done to improve the present service, and the money that is derived from this increase in temporary rates will be applied, so far as necessary, in carrying out the suggestions of the Railroad and Warehouse Commission, if any such suggestions are made, and are feasible.

Now, counsel can get together and draw the restraining order, embodying the results of what I have said, if I have made myself clear —may present such an order to the court, and it will go into effect at once. The manner of billing will have to be determined from a practical standpoint, and probably counsel could suggest better than I can what that practical method will be. I see no objection to having separate bills sent out from the time when this order goes into effect, where such billing covers a period of time prior to the going into effect of the temporary restraining order, and also a period of time subsequent; that is, to have one bill on the old rate up to the time the temporary restraining order goes into effect, and a separate bill for the balance of the time. Two bills will be necessary, of course, only where the period of time covered includes a time prior to the effective date of the temporary restraining order, and also a time subsequent to it.

Mr. Flannery: May we have an exception to the court's ruling?

The Court: An exception may be noted to the decision of the court and the order.

The foregoing oral decisions were rendered at the hearing of the motion for a restraining order. Inasmuch as a transcript of them was furnished counsel, and reference has been made to them by counsel upon the hearing for a preliminary injunction before the enlarged court of three judges, and also by Circuit Judge Sanborn in announcing the decision of that court, it is at the request of counsel ordered that the foregoing transcript be filed as part of the record in the case.

[Signed] WILBUR F. BOOTH, Judge.

## On Hearing of Applications for Interlocutory Injunctions.

Before SANBORN, Circuit Judge, and MORRIS and BOOTH, District Judges.

SANBORN, Circuit Judge. These applications for interlocutory injunctions present three principal questions: First. Were these suits premature? Second. Were they legally stayed by the provisions of section 266 of the Judicial Code, in view of the fact that the state brought a suit against the companies and the state court stayed proceedings under the order of the commission denying the application of the companies for increased rates? And, third. Are the old rates, which the statutes, in the absence of relief in equity, require the companies to use, confiscatory? On the application for the restraining orders and in other proceedings in these cases Judge BOOTH was compelled to decide and express his opinion upon each of these questions, and those opinions have been printed. He answered the first and second questions in the negative, and the third in the affirmative.

Upon the applications now in hand this court has received and examined evidence, heard arguments, and deliberately considered the questions in the light thereof, and it is unanimously of the opinion that the answers to these questions already given were correct, and that the reasons assigned therefor were sound. The court therefore refers to, affirms, and adopts the opinions of Judge BOOTH upon the questions there discussed, and interlocutory injunctions will be issued.

The proof before us has left no doubt in our minds that the old rates fail to produce sufficient income to escape confiscation in either of the cases. We are of the opinion that the rates prescribed by the restraining orders are probably still too low, but this is not certain. They approximate reasonable rates, expense and annoyance follow changes in them, and we are of the opinion that they should be maintained for a test period of six or eight months, at the end of which time any party to the suit, who can make it appear by proof that under the law they are either too high or too low, may apply to the court for relief.

---

⬩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes