170 So. 548

**SOUTHERN BELL TELEPHONE & TELE-
GRAPH CO., Inc., v. LOUISIANA PUB-
LIC SERVICE COMMISSION.**

No. 33978.

Oct. 6, 1936.

Gaston L. Porterie, Atty. Gen., James P. O'Connor and Peyton R. Sandoz, Sp. Asst. Attys. Gen., Henry O'Connor, of New Orleans, and Joseph A. Loret, of Baton Rouge, for appellant.

E. D. Smith, of Atlanta, Ga., C. C. Bird, Jr., of Baton Rouge, and James C. Henriques and Charles J. Rivet, both of New Orleans, for appellee.

FOURNET, Justice.

This case was previously before us on an appeal from a judgment of the lower court refusing an interlocutory injunction to restrain the enforcement of order No. 1530 of the Louisiana Public Service Commission reducing telephone rates, and, having concluded that the plaintiff had failed to show that the commission's order was palpably erroneous, arbitrary and confiscatory, and that the trial judge had abused his discretion in refusing to grant the interlocutory injunction, we affirmed the judgment. Southern Bell Tel. & Tel. Co. v. Louisiana Public Service Comm., 183 La. 741, 164 So. 786.

The case is now before us on a motion to dismiss the appeal, which was taken by the Louisiana Public Service Commission from the judgment of the lower court, rendered on the trial of the case on its merits, setting aside and declaring null the order of the commission and granting a permanent injunction against the enforcement thereof; and with an alternative plea that, if the appeal be not dismissed, it be maintained as a devolutive appeal only.

The record shows that appellant applied for an order for an appeal to this court "in the alternative, either suspensive or devolutive"; that the trial judge granted the order of appeal accordingly and made it returnable on May 28, 1936, dispensing appellant from furnishing an appeal bond; that before the return day of the appeal, the clerk of the district court filed with us a motion for and obtained an extension of the return day on the ground that, due to the voluminousness of the record, he did not have sufficient time in which to prepare the transcript of appeal before the return day; and that, before the extended period of time, the transcript was filed with the clerk of this court.

It is the contention of the appellee that the appeal must be dismissed because the extension of time granted by us was unauthorized and illegal, and consequently the transcript of the record was not filed within the time fixed by the Constitution and the order of the lower court. The basis of this contention is, first, that the Supreme Court is only authorized to grant an extension of time in cases where, on the appointed day or within 3 days of grace, the appellant has not filed the transcript, provided he was prevented from doing so by an event not under his control; and, second, that the request for further time to bring up the record from the lower court must be made by appellant in person or by his attorney exclusively, under the express terms and provisions of article 883 of the Code of Practice, which reads as follows:

"If the appellant has not filed in the Supreme Court, on the day appointed by the

inferior judge, the record from the court below, and was prevented from doing so by any event not under his control, he may either in person or by attorney apply to the court before the expiration of three days, after which the appellee may obtain a certificate from the clerk declaring that the record has not been filed, and may demand a further time to bring it up, which may be granted by the court if the event causing the delay be proved to its satisfaction; the court may even grant an injunction to the appellant, during the further time allowed, to suspend the execution on the judgment appealed from, if at the time of petitioning for such further delay, the appellee has already required of the clerk the certificate necessary for the pursuit of such execution."

But section 11 of Act No. 45 of 1870, Ex. Sess., provides that "no appeal of the Supreme Court shall be dismissed on account of any defect, error or irregularity of the petition, citation or order of appeal * * * *or because the appeal was not made returnable* * * *on a proper day,* whenever it shall not appear that such defect, error or irregularity may be imputed to the appellant or his attorney. * * *" (Italics ours.)

This court, in discussing Act No. 53 of 1839, section 19, which was the forerunner of Act No. 45 of 1870 on this subject, in the case of Jno. Chaffe & Sons v. Heyner, 31 La.Ann. 594, at page 595, said:

"But that case was decided in 1832, and the statute of 1839 operated a great and necessary change in the mode or causes for which appeals were dismissable. The rankest injustice had been so often done by the dismissal of appeals for all manner of technicalities and informalities, that provision was then made, saving parties appellant from dismissal for defects or irregularities not imputable to them."

See, also, Chaffe v. Heyner, 31 La.Ann. 594, supra; State v. Dellwood, 33 La.Ann. 1229; State v. West, 33 La.Ann. 1261; State v. Balize, 38 La.Ann. 542; Watkins Banking Co. v. Louisiana Lumber Co., 47 La.Ann. 581, 17 So. 143; Pearce v. State ex rel. Breazeale, 49 La.Ann. 643, 21 So. 737; Hodge v. Monroe Mercantile Co., 105 La. 668, 30 So. 142; Jackson v. Mixon, 110 La. 581, 34 So. 695; Orleans & J. Ry. Co. v. International Const. Co., 113 La. 409, 37 So. 10; Dilzell Engineering & Const. Co. v. Lehmann, 120 La. 273, 45 So. 138; Alexandria & W. Ry. Co. v. Railroad Commission, 143 La. 1067, 79 So. 1067.

Under the authority of the foregoing statutory law and the uniform jurisprudence of this court, it is immaterial whether or not this court was authorized to grant the extension of time within which to file the transcript in this case, for an appeal cannot be dismissed for an error or irregularity in the return date, whether as originally fixed by the lower court or by extension granted by this court, unless the error or irregularity is imputable to the fault of the appellant. Manifestly, if there was any irregularity or error it was not the result of any action taken by the appellant or its attorneys, or caused through their fault.

As an alternative plea, we are requested by appellee's counsel to determine whether the appeal in this case is suspensive or devolutive only. It is said that, if we conclude

that it is suspensive, such appeal deprives appellee of its property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States, in that it would result in compelling appellee to either obey the commission's order under judicial review or be subjected to enormous penalties.

■ It is fundamental that only one appeal can be taken from a judgment, and, when an order of appeal grants the appellant an appeal in the alternative, suspensive or devolutive, it does not mean that appellant has two appeals but that he may perfect either. Orlando v. Reliance Homestead Ass'n, 171 La. 1027, 132 So. 777. It therefore follows that, when an order grants an appeal in the alternative, the character of the appeal is determined by the amount of the bond furnished by the appellant and the time within which the bond is filed, and, if the bond is sufficient for a suspensive appeal and is filed within the time fixed for such an appeal, the appeal is suspensive. In this case the appellant was dispensed from furnishing an appeal bond under the express provisions of article 6, § 5, of the Constitution of 1921, and generally under the provisions of Act No. 173 of 1902. When an appellant is exempt from furnishing an appeal bond, as in this case, the rendition of the order of appeal has the same effect as the filing of the bond in ordinary cases; thus the appeal is ipso facto perfected by the order granting it. Board of Commissioners v. Howard Land & Timber Co., 132 La. 911, 61 So. 868; Board of Commissioners v. Concordia Land & Timber Co., 132 La. 915, 61 So. 869; Board of Commissioners v. Hops, 132 La. 915, 61 So. 869;

Board of Commissioners v. Farmer-Wren Land Co., 132 La. 916, 61 So. 870.

In the case of Agricultural Supply Co., Inc., v. Livigne et al., 177 La. 15, 147 So. 365, 366, the court distinguished between the right to a suspensive appeal from a preliminary injunction and the right to a suspensive appeal from a permanent injunction after the trial of the case on the merits, and then stated:

"It is true that a suspensive appeal cannot be applied for as a matter of right from an order granting or refusing a preliminary injunction. Act No. 29 of 1924, § 5.

"But, in the case before us, respondent judge has not only refused to grant a preliminary injunction, but has passed also upon the merits of the case, by decreeing the nullity of the sale from defendants to relator of the property herein seized by plaintiff.

"Necessarily, this is a final judgment from which relator has the right to prosecute a suspensive appeal to this court. C. P. arts. 539, 565."

■ The foregoing case presents the law and procedure applicable to the case at bar. Moreover, in appealable cases, the party cast always has the right to take a suspensive appeal from the final judgment except in those cases in which the law expressly provides otherwise. Young v. Village of Bossier City, 152 La. 18, 92 So. 719; Washington v. W. W. Page & Son, 165 La. 1000, 116 So. 486; Everett v. Hue & Aarnes, 173 La. 420, 137 So. 201.

■ The appellant, having complied with all the requirements for taking a suspensive

appeal, is entitled to have the appeal treated as such.

We think that ordinarily this would be sufficient to dispense with any further discussion of the case, but counsel for appellee seriously argued in their brief that such a construction would have the effect of depriving appellee of its property without due process of law, in contravention of its rights under the Fourteenth Amendment to the Constitution of the United States. In support of their contention, they have cited the decisions of the Supreme Court of the United States in the case of Porter v. Investors' Syndicate, 286 U.S. 461, 52 S.Ct. 617, 76 L. Ed. 1226; Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.(N.S.) 932, 14 Ann.Cas. 764; and Wadley Southern Railway Company v. State of Georgia, 235 U.S. 651, 35 S.Ct. 214, 220, 59 L.Ed. 405.

A review of the cited cases discloses that each is predicated upon a state of facts in no wise analogous to those presented in the case at bar. The question involved in the case of Porter v. Investors' Syndicate, supra, hinges upon the proposition as to whether or not the enforcement of an order by the investment commissioner of Montana, whereby a permit to an investment company to do business in the state was revoked, could be temporarily enjoined until the validity of the order could be determined in the courts; the contention being that the "Blue Sky" Law made no provision for an interlocutory injunction in such cases, and hence was a deprivation of the complainant's rights guaranteed by the due process clause of the Fourteenth Amendment.

We do not have the same situation here as existed in the Montana case, for the Consti-

tution of Louisiana of 1921, article 6, § 5, contains a special provision for the issuance of interlocutory injunctions against the orders of the Louisiana Public Service Commission in instances where the trial court is of the opinion "that irreparable loss or damage would result to plaintiff" through the enforcement of the order.

In the Young Case, supra, the Attorney General of Minnesota, having been held to be in contempt of court for attempting to enforce the state statute then being assailed as unconstitutional, after having been enjoined from so doing by a federal court, sought to obtain his release from punishment by a writ of habeas corpus, which was denied. While the court discussed the question of its jurisdiction to restrain the enforcement of a state statute providing for penalties so enormous as to amount to the taking of property without due process of law, the real issue before the court, and the one it determined in that case, was whether or not the Attorney General of Minnesota was immune from punishment for contempt of an order of a federal court on the ground that the action against him was in fact an action against the state of Minnesota, under the provisions of the Eleventh Amendment.

The last-cited case by counsel for appellee and the court's reasons for judgment are more favorable to the appellant than to the appellee in view of the fact that the Constitution of this state unqualifiedly grants the company the right of judicial review of the commission's order. The court, after discussing the law of Georgia, stated:

"From an examination of that section of the Code it is quite clear that it recognizes

the right to a judicial review of administrative orders. Until it has been given a contrary construction by the state court, it must be here construed in such a way as to leave it valid, and as conferring that sort of right which furnishes the adequate and available remedy which meets the requirement of the Constitution. Any other construction would not only impute to the legislature an intent to deny the equal protection of the law, and to permit the carrier to be deprived of property without due process of law, but it would operate to nullify the penalty section as a whole. Giving, then, § 2625 that construction which makes it constitutional, and it appears that the laws of Georgia gave to the Wadley Southern R. R. Co. the right to a judicial review of the order of March 12, 1910, by a suit against the commission.

"The only question, then, left for determination, is whether, in view of such right, the penalty can be collected for the violation of an order not known to be valid at the date of the disobedience sought to be punished. On that question, little can be found in the books. But on principle, and on the authority of all that has been said on the subject, there is no room to doubt the power of the state to impose a punishment heavy enough to secure obedience to such orders after they have been found to be lawful; nor to impose a penalty for acts of disobedience, committed after the carrier had ample opportunity to test the validity of administrative orders and failed so to do. * * *

"If the Wadley Southern Railroad Company had availed itself of that right, and—with reasonable promptness—had applied to the courts for a judicial review of the order, and if, on such hearing it had been found to be void, no penalties could have been imposed for past or future violations. If, in that proceeding, the order had been found to be valid, the carrier would thereafter have been subject to penalties for any subsequent violations of what had thus been judicially established to be a lawful order—though not so in respect of violations prior to such adjudication.

"But, where, as here, after reasonable notice of the making of the order, the carrier failed to resort to the safe, adequate, and available remedy by which it could test in the courts its validity, and preferred to make its defense by attacking the validity of the order when sued for the penalty, it is subject to the penalty when that defense, as here, proved to be unsuccessful."

In this case, the district court, acting under the provisions of the Constitution of Louisiana, granted the appellant herein a temporary restraining order, pending a hearing on the question of whether the plaintiff was entitled to an interlocutory injunction, and, after due hearing on that question, the trial judge dismissed the temporary injunction he had granted and denied appellee an interlocutory injunction, which we upheld and assigned as our reasons therefor that the plaintiff had failed to show that the order of the commission was erroneous, arbitrary and confiscatory, or that the trial judge had abused his discretion. Southern Bell Tel. & Tel. Co. v. Louisiana Public Service Commission, supra.

The case is now on appeal from a final judgment on its merits and is in the same

status and category as all cases on appeal from a final judgment. The appellee is in the same situation as any other litigant who claims to be wrongfully deprived of his property, and its counsel fail to appreciate the difference between depriving one of his property pending a court's decision on a suspensive appeal, and being deprived of it without due process of law. *Whether or not plaintiff is being deprived wrongfully of its property can only be judicially determined by a final judgment of this court.* It is no more a denial of due process of law for appellee to be temporarily deprived of its property, pending a final judgment of this court wherein it might be determined to have been wrongfully deprived thereof, than it would be to permit appellee to wrongfully charge high rates to its subscribers if the order is finally determined to be proper and legal. No one would seriously contend, under our established jurisprudence on procedure, that the due process clause of the Constitution of the United States was violated by permitting a litigant, who was held by the district court to be illegally in possession of plaintiff's property, to have the judgment of the lower court reviewed on a suspensive appeal, which, of course, gives appellant the right to retain possession until the final judgment.

In the case of State v. Young, 142 La. 865, 77 So. 772, 774, this court quoted, with approval, Black on Constitutional Law as follows:

" 'Due process of law in judicial action,' * * * 'implies a regular proceeding before a competent court, possessing jurisdiction, with opportunity to the party to appear and be heard in his own defense or in rebut-

tal of the claim made against his property.' Again, quoting from the same paragraph, by the same author, 'When the proceedings are had in a court of justice, and are based upon jurisdiction lawfully acquired, and are conducted with due regard to all the rights of the defendant, it must in general be held that the judgment arrived at is due process of law.' * * * "

On the same subject matter, the Supreme Court of the United States, in the case of Sylvester Pennoyer v. Marcus Neff, 95 U.S. 714, at page 733, 24 L.Ed. 565, stated:

"Whatever difficulty may be experienced in giving to those terms [due process of law] a definition which will embrace every permissible exertion of power affecting private rights, and exclude such as is forbidden, *there can be no doubt of their meaning when applied to judicial proceedings. They then mean a course of legal proceedings according to those rules and principles which have been established in our systems of jurisprudence for the protection and enforcement of private rights.* To give such proceedings any validity, there must be a tribunal competent by its constitution—that is, by the law of its creation—to pass upon the subject-matter of the suit; and, if that involves merely a determination of the personal liability of the defendant, he must be brought within its jurisdiction by service of process within the State, or his voluntary appearance." (Brackets and italics ours.)

See, also, Compagnie du Port de Rio de Janeiro v. Mead Morrison Mfg. Co. (D.C.) 19 F.(2d) 163; and 12 Corpus Juris, § 956.

We are of the opinion that the judgment of the lower court in this case is a final judgment from which the appellant, under the law and established jurisprudence of this state, was entitled to and did appeal suspensively; and the appellee is not thereby deprived of its property without due process of law.

For the reasons assigned, the appellee's motion to dismiss the appeal and its alternative plea that the appeal be declared devolutive only are denied.

ODOM, J., concurs in the decree.

O'NIELL, C. J., concurs in the decree and hands down an opinion.

O'NIELL, Chief Justice (concurring).

Although I concur in the decree overruling the motion to dismiss this appeal, my opinion is that section 11 of Act No. 45 of 1870, Ex.Sess., p. 101, is not applicable to a case where the transcript of appeal is not filed on or before the return day, or within 3 days thereafter, or within an extension of time granted by the appellate court.

In this case, the appeal was made returnable within 10 days after the granting of the appeal, as required by section 5 of article 6 of the Constitution. On the third day after the appeal was granted, being the seventh day before the return day, the clerk of the district court filed in the Supreme Court a motion to extend the time allowed for filing the record in this court, for an additional period of 30 days; and, on the day of the filing of the motion, the Chief Justice granted the extension asked for. The transcript was filed in this court before the expiration of the 30 days.

The appellee's motion to dismiss the appeal, on the ground of abandonment, is founded upon three distinct complaints. The first complaint is that the motion for the extension of the time allowed for filing the transcript was filed before the return day, and hence not on or within 3 days after the return day. The second complaint is that the motion or application for the extension of the time allowed for filing the transcript was not filed by the appellant, either in person or by an attorney for the appellant, but was filed by the clerk of the district court. The third complaint is that the motion or application for the extension was addressed, not to the Supreme Court, but to the district court.

I do not consider it a matter of any importance that the application for the extension of the time in which to file the transcript was made before the return day. Attached to the application for the extension was an affidavit of the clerk of court saying that the record was so voluminous, containing approximately 3,500 pages of pleadings and documents to be copied, that it would be impossible for him to complete the transcript within the time allowed. There was therefore no doubt that the appellant was entitled to the extension of the time allowed for filing the transcript, and hence there was no necessity for waiting until the return day before granting the extension.

I do not consider it important that the application for the extension was made by the clerk of the district court, instead of being made by the appellant, either in person or by its attorney. Whether the Chief Justice would have been justified in a refusal to grant the extension on the application of

the clerk of court, or in requiring that the appellant should make the application, is a matter of no importance, because, after the order was granted, it was not necessary for the appellant or the appellant's attorney to apply for an extension. The attorneys for the appellant were justified in relying upon the order granting the extension on the application of the clerk of court.

As to the third complaint of the appellee, it is true that the motion for an extension of the time allowed for filing the transcript was not addressed to the Supreme Court. In fact, the caption of the motion had reference only to the district court; but, when the motion was filed in the Supreme Court, the indorsement on the document had reference to the number and title of the case in the "Supreme Court of Louisiana." The docket number, of course, was left in blank, to be filled in by the clerk of the Supreme Court, because it could not be known until the motion was filed what number the case would have on the docket of this court. All of which shows sufficiently that the motion was intended to be addressed to the Supreme Court.

Conceding, for the sake of argument, that any or all of the complaints made by the appellee would be a sufficient reason for the Chief Justice or an Associate Justice of this court to refuse to grant an extension of time within which to file a transcript of appeal, it would be unjust to dismiss the appeal for any such reason after the extension has been granted, and the appellant has relied upon the order granting the extension, until it is too late to comply with the requirements which might have been made before the extension was granted.

I concur in the opinion that the granting of a suspensive appeal in a case like this is not essentially violative of the due process clause of the Fourteenth Amendment of the Constitution of the United States. Whether the order of the Public Service Commission, which is in contest in this case, is arbitrary, unreasonable and confiscatory, is a matter to be determined on consideration of the merits of the case.