236 So.2d 813

**SOUTH CENTRAL BELL TELEPHONE COMPANY**

v.

**LOUISIANA PUBLIC SERVICE COMMISSION.**

**No. 50425.**

June 8, 1970.

Rehearing Denied June 29, 1970.

Norman C. Frost, Birmingham, Ala., James W. Hammett, Harvey Peltier, New Orleans, James D. Sparks, Monroe, Breazeale, Sachse & Wilson, Victor A. Sachse, and Victor A. Sachse, III, Baton Rouge, for plaintiff-relator.

Joseph H. Kavanaugh, Marshall B. Brinkley, Baton Rouge, for defendant-respondent.

BARHAM, Justice.

.South Central Bell Telephone Company filed a petition in the district court for injunctive relief against the Louisiana Public Service Commission. The petition was dismissed on exceptions, and we granted certiorari. For a clearer exposition of the present case we shall outline certain proceedings before the Public Service Commission although we are not directly concerned with those proceedings in this particular suit.

Basic intrastate telephone rates for South Central Bell Telephone Company, the plaintiff, were fixed by the Louisiana Public Service Commission under its constitutional authority on May 5, 1960. Except for minor adjustments the Company has operated under these rates to date. On December 27, 1968, the Company filed with the Commission an application for a permanent increase in its rates which would provide an increase of about 11 per cent in its revenues, or a $17,000,000.00 increase annually. The application additionally requested that the Commission under its Rule N(1) (b) authorize an emergency interim increase. Three supplemental applications were subsequently filed which had the total effect of asking an 8½ per cent return on the Company's investment so as to provide both an interim and a permanent increase in annual revenue of about 13 per cent, or approximately $24,000,000.00.[1]

On March 5, 1969, the Company asked that a hearing date on its permanent rate application be set for July. The hearing was actually fixed for September 16 and 17, 1969, and was limited to a presentation of the Company's evidence in chief in support of its application for a permanent in-

---

1. The Company's first amended application, filed September 4, 1969, sought a rate of return of about 8½ per cent, which would provide an increase in annual revenue of about 13 per cent. The second supplemental application, filed October 14, asked for an immediate authorization to increase rates and charges on .an interim basis to provide earnings of at least 7 per cent pending final determination of permanent rates. The third supplemental petition, filed December 15, contained three attachments:

A schedule of proposed rates to produce a fair return on the Company's investment during this interim; a proposed bond for indemnification in the event a rate increase was allowed in the interim but disallowed in whole or in part upon final determination; and an affidavit or "testimony" of the Company's general forecast and rate supervisor, setting forth that the proposed interim rate would produce an 8½ percent rate of return on net investment and provide an annual revenue increase of $24,000,000.00.

crease. Because much of the Company's evidence was introduced by way of affidavits and depositions, the Commission took this evidence for study before subsequent cross-examination of the Company's witnesses and presentation of opposition evidence to the application.

On November 20, 1969, the Commission requested further information of the Company, some of which was furnished on December 23, 1969, and the remainder on January 15, 1970. On January 22, 1970, the Commission issued a press release stating that it would set a hearing to commence February 12 on the Company's application for interim rates as well as for the purpose of cross-examining witnesses whose evidence had been presented at the September hearing on the case in chief, and formal notice of this hearing was given on January 26. An order was issued by the Commission on February 13, 1970, denying the interim rates, but no appeal has been taken from this order and it is not before us in the present matter.

On January 22, 1970, before the Commission's determination on the interim rate application, the Company by petition filed in the Nineteenth Judicial District Court sought to have that court enjoin the Commission from enforcing present rates and charges and from interfering with the Company's setting and collecting rates and charges according to the tariff attached to the petition. Although the prayer for injunctive relief was stated in the negative, compliance with the Company's prayer would require the court to approve and order an interim rate increase.

The court record before us, then, consists of the Company's petition; the applications filed with the Commission and attached documents, affidavits, exhibits, the testimony of the Company's general forecast and rate supervisor, the proposed schedule of rates and charges and bond; the direct examination of two witnesses who had appeared before the Commission at its September hearing; the exhibits requested by the Commission and furnished by the Company; exceptions of prescription, improper use of summary procedure, prematurity, and lis pendens filed by the Commission to this suit for injunctive relief; and the two stipulations of the parties agreeing to certain facts and to introducing certain evidence if the petition for preliminary injunction was to be considered on the merits. According to the minutes of the Nineteenth Judicial District Court of February 2, 1970, the exceptions were argued, submitted, and taken under advisement, evidence was introduced on the rule for preliminary injunction, and the matter was taken under advisement. On February 17, 1970, the district judge filed written reasons in the record, stating that the exception of prematurity and the exception of lis pendens were maintained.

The Company's petition for injunction which sought to invoke the jurisdiction of the trial court alleged that the rate of return permitted by the Commission was confiscatory, in violation of the Constitutions of Louisiana and the United States. The trial court refused to exercise its jurisdiction, reasoning that the Company had not exhausted its remedies before the Public Service Commission and that the suit was therefore premature, and that the relief sought was identical with that sought from the Commission and that therefore the exception of lis pendens was good.

There are several procedural grounds upon which we might possibly dispose of this matter. Apparently the trial court found that the factual allegations in the petition did not support the general allegation of confiscation, and that the suit concerned only matters within the jurisdiction of the Commission and was premature. Should we conclude, to the contrary, that the Company's petition under its charge of denial of constitutional protection by reason of confiscation does allege a cause of action which may be determined *only* by a court, we could remand to the district court and require it to make a determination on the merits. We might even recall

this writ as improvidently granted since the supervisory jurisdiction of the Court of Appeal was not invoked before application was made to us.[2] The majority of this court, however, is of the opinion that the matter is of such public importance that we should decide the case on its merits on the record before us, rather than make a disposition of it upon technical grounds which would only cause delay.

Under Article 6, Sections 3–9, of the Constitution of Louisiana the Public Service Commission has exclusive jurisdiction in the first instance to fix or change any rate to be charged by a public utility, and the courts are without power to fix or change rates until that Commission has acted. Nevertheless, a violation of constitutional rights, such as confiscation of property, would require a court to exercise the necessary authority to grant relief from the constitutional abuse.

The Company's contention, simply stated, is that, principally because of the increased cost for acquisition of capital, present rates and charges for services yield a rate of return so inadequate as to be confiscatory, and that it must be allowed an immediate rate increase.

2. The instant case is obviously not one " * * * in which orders of the Public Service Commission are in contest * * * " of which the Supreme Court is given appellate jurisdiction under Article 7, Section 10(3), of the Constitu-

tion. Under Article 7, Section 29, the Courts of Appeal have supervisory jurisdiction, subject to the Supreme Court's general supervisory jurisdiction, in those cases therein enumerated of which they are granted appellate jurisdiction.

Admittedly, the Company in the first half of 1969 received a rate of return of 5.87 per cent on its average net investment. The record shows that the Company sold an issue of debt capital at a cost of 8.53 per cent in November, 1969. However, a simple comparison of these two rates is not decisive of the legal question before us.

We need not, indeed we cannot, determine what are valid permanent rates and charges. We can determine only whether a continued imposition of present tariffs would constitute confiscation of the Company's property. Although it may be that the Company should receive a higher rate of return on its investment and is entitled to have the Commission fix rates and charges which will produce such a return, the record does not justify a finding that the present rate of return is so inadequate as to be confiscatory. Furthermore, there is nothing in the record which convinces this court that it would be warranted in allowing the extraordinary remedy of fixing rates by injunction as an exception to the specific constitutional provisions defining the Public Service Commission's powers. In addition, the plaintiff has not convinced us that it will suffer irreparable injury if it is forced to await a contradictory hearing and final determination by the Commission as to the justified rate of return and the tariffs necessary to establish that rate of return.

We reiterate: We are not here concerned with a determination of reasonable telephone rates and charges or with a valid yield of return on the Company's investment for its operations. We pass only upon the question of whether the Commission's action or inaction amounts to a constitutional violation—that is, confiscation of the Company's property. We hold that the Company has failed to establish that the Commission's enforcement of present rates is tantamount to confiscation.

In the petition, in brief, and in argument the Company implies that the Commission has been dilatory in holding hearings on this matter, and that the delays were intentionally damaging to and discriminating against the Company. However, this is not presented to us for determination. If there is truth in this implication, the Company may seek the court's supervision under a proper petition for such relief as it feels necessary.

For the reasons stated the suit is dismissed at plaintiff's costs.

SUMMERS, Justice (dissenting).

The Louisiana Public Service Commission fixed rates applicable to the operations of South Central Bell Telephone Company for basic intrastate telephone service on May 5, 1960. These rates were based upon conditions, wage levels, interest rates and other costs for telephone service

which existed in the late 1950's. Except for minor changes, the Company has operated on these rates since. On December 27, 1968 the Company filed an application with the Commission for revision of these rates and charges, setting forth that expanded communication facilities were needed to meet the needs of a marked growth in the State's economy; the accelerated inflationary trends in 1967 and 1968 had brought about severe increases in its cost of doing business; and the drastic increase in the cost of capital had reduced the Company's rate of earnings. The situation, the Company alleged, also created an emergency requiring an interim increase in rates pending full investigation by the Commission of the need for the rate increase.

The interim increase is sought under the Commission's Rules of Practice, which, under Sub-Section N(1) (b) provides in part that

> Whenever the Commission in its discretion deems it advisable in the interest of the public to grant an application or petition for such a change in rates or service it may issue authority for such change to become effective at such time as is specified by the Commission subject to review on complaint of any interested party.

No action was taken by the Commission on this application. The Company requested a hearing in July.

On July 29, 1969, the Commission ordered that a hearing to be held on the application on September 16 and 17, 1969.

Early in September 1969 the application was amended to allege that to provide the company with a fair rate of return, about 8½ percent, its revenues should be increased annually to about 13 percent of the revenues for the six months ending June 30, 1969, annualized.

Then, on September 16 and 17, 1969, the Company presented its case in chief; and, by agreement, the matter was held over for cross-examination of the Company's witnesses.

A second supplemental application was filed by the Company on October 14, 1969, setting forth that since the filing of the application on December 27, 1968, its earnings had continued to deteriorate at an accelerated rate. And, since it was then apparent that it would not be possible to obtain a final decision on its request for rate increases until 1970, conditions warranted an immediate increase on an interim basis to provide a 7 percent rate of return on the Company's Louisiana investment. It was also alleged that the public interest could not be served by the Company or the Commission unless the Company maintained its credit and ability to attract capital which was being seriously impaired by the reduced rate of return resulting from inflation, increased costs and accelerated cost

of capital. No action was taken by the Commission.

A third supplemental application was filed by the Company on December 15, 1969 in which it was alleged that since its October supplement, the Company was required to borrow money in November 1969 by sale of $125,000,000 bonds, the cost of which was 8.53 percent, and on December 2, 1969 Pacific Telephone & Telegraph Company, a Bell System Company, paid 9.-20 percent for a $150,000,000 bond issue making it evident that a substantial increase in its rates and charges was essential to prevent continuing confiscation of its property. Accordingly, the Company attached a schedule increasing rates and charges by $5,000,000 on an interim basis subject to review. This increase was calculated to bring an 8½ percent rate of return on the Company's investment. The increased charges were to be refunded if found to be excessive by the Commission after further study. A bond was proposed to secure the refund if required.

Again no action was taken by the Commission, and the Company, on January 22, 1970, instituted this suit for injunction in the Nineteenth Judicial District Court in East Baton Rouge Parish. The petition set forth the facts already recited in the applications filed with the Commission and alleged that the additional costs of doing business reduced the Company's rate of return on its investment which amounted to

a confiscation of its property. It alleged also that the loss it suffered day by day by the confiscation was irreparable for the Commission could not, under the law, make any future rate increase retroactive in order to restore the loss. Accordingly, the Company sought an order enjoining the Commission from enforcing the tariff established in 1960 or from interfering with imposition or collection of tariffs proposed by the Company pending lawful determination by the Commission of reasonable and just rates and charges.

To this petition for injunction the Commission filed exceptions of prescription, improper use of summary procedure, lis pendens and prematurity. In its exceptions of lis pendens filed on February 1, 1970 the Commission referred to the fact that a hearing had been held in September and additional hearings would be held on February 12 and 13, 1970 on the request for the interim rate increase.

A hearing was held on the exceptions and the Company's petition in the District Court on February 2, 1970. It was stipulated at this hearing that the Company's testimony would be introduced subject to objection of the Commission, and the testimony would be confined to that of two Company witnesses before the Commission on September 16 and 17, 1969 together with the affidavits attached to the Company's petition. The Commission offered no evidence.

In the meantime, according to the briefs on file, the Commission held a hearing on the application for interim relief on February 12, 1970. Though the Commission's consultant was present at this hearing, the Commission again offered no evidence in opposition to the Company's application. By its order dated February 13, 1970 the Commission denied the interim rate increase.

Then, on February 17, 1970, the Court issued its judgment denying the Company's petition for injunction. In reasons for judgment, the Court found the exceptions of prescription and unauthorized use of summary procedure to be "clearly without merit." The exceptions of lis pendens and prematurity were considered with the merits, and the injunction and interim rate were denied. Certiorari was granted on the Company's application in order that we might ascertain the validity of these proceedings. The majority denies the relief sought by the Company.

In my view the trial court correctly overruled the exceptions of prescription and unauthorized use of summary process. However, error was committed when the injunction was denied and the interim rate increase was disallowed. The majority perpetuates that error in its decision today.

All of the exceptions present one salient issue: Was it error to resort to injunctive process here when a procedure is pre-

scribed by law for such cases? This is true because the exceptions are based upon the failure of the Company to observe the procedure the law prescribes for redress from Public Service Commission action. La.R.S. 45:1191 et seq.

Though not denying the jurisdiction of courts to grant injunctions in such cases, the Commission asserts that orderly procedure required the Company to appeal the Commission's order of February 13, 1970 denying an interim rate increase to the District Court in keeping with authorized procedure instead of pursuing this injunction proceeding. The argument is not impressive. The Court is not asked in these proceedings to supersede the Commission in its constitutionally imposed duty to fix reasonable and just rates (La.Const. art. 6, § 5). This resort to the Courts asks only that confiscation be enjoined—that the res be preserved—while the rate making proceeds, for the rate making process as constituted by law and as applied in this case is not protecting the Company from the confiscation which occurs pending a determination of just and adequate rates. Courts are open to give this relief. Banton v. Belt Line Railway, 268 U.S. 413, 45 S.Ct. 534, 69 L.Ed. 1020 (1924); Oklahoma Natural Gas Co. v. Russell, 261 U.S. 290, 43 S.Ct. 353, 67 L.Ed. 659 (1923); Newton v. Consolidated Gas Co., 258 U.S. 165, 42 S.Ct. 264, 66 L.Ed. 538 (1922). In West v. Town of Winnsboro, 252 La. 605,

211 So.2d 665 (1968), we said "a district court always has jurisdiction in a civil action to grant an equitable remedy."

Authority of courts to issue injunctions in these matters depends upon a showing of irreparable injury and the Company must bear the burden of this showing. Southern Bell Tel. & Tel. Co. v. Louisiana Public Service Commission, 183 La. 741, 164 So. 786 (1935).

> Property may be as effectively taken by long-continued and unreasonable delay in putting an end to confiscatory rates as by an express affirmance of them; and where, in that respect, such a state of facts is disclosed as we have here, the injured public service company is not required indefinitely to await a decision of the rate-making tribunal before applying to a federal court for equitable relief. Smith v. Illinois Bell Telephone Co., 270 U.S. 587, 591, 46 S.Ct. 408, 410, 70 L.Ed. 747 (1925).

See also Banton v. Belt Line Ry., 268 U.S. 413, 45 S.Ct. 534, 69 L.Ed. 1020 (1925); Oklahoma Natural Gas Co. v. Russell, 261 U.S. 290, 43 S.Ct. 353, 67 L.Ed. 659 (1923); Northwestern Bell Tel. Co. v. Hilton, 274 F. 384 (D.C.Minn.1921).

Irreparable injury will result here, the Company argues, for there is no means provided by law for the Commission to give retroactive rate increases. Thus all losses resulting from a rate of return below the 6 percent, which this Court considered to be reasonable and necessary to prevent confiscation in its decision in 1960, will result in irreparable injury. See Southern Bell Telephone and Telegraph Company v. Louisiana Public Service Commission, 239 La. 175, 118 So.2d 372 (1960). In order to avoid confiscation, according to our decision in that case,

> * * * (T)he return to the equity owner should be commensurate with returns on investments in other enterprises having corresponding risks. That return, moreover, should be sufficient to assure confidence in the financial integrity of the enterprise, so as to maintain its credit and to attract capital. Federal Power Commission v. Hope Natural Gas Company, 320 U.S. 591 at 603, 64 S.Ct. 281, 88 L.Ed. 333 (1944).

Confiscation, of course, involves a taking of property without the payment of adequate compensation; it is a violation of Article I, Section 2, of the Constitution providing that property may not be taken except after just and adequate compensation is paid. The protection of the Due Process Clauses of the State and Federal Constitutions are also violated by confiscation for a state is without power to require the Company to provide telephone service without compensation which will provide a fair return on its investment. Stock in the Company is privately owned and when the State undertakes to regulate private invest-

ments it brings about an obligation under the law not to deny a reasonable return to the investor.

To enforce these rights, courts may, in the exercise of their jurisdiction, issue all "needful writs." La.Const. art. 7, § 2. The Constitution also provides in Article VI, Section 5, for the issuance of interlocutory injunctions against the orders of the Commission in instances where the trial court is of the opinion "that irreparable loss or damage would result to plaintiff" through the enforcement of the order. Southern Bell Tel. & Tel. Co. v. Louisiana Public Service Commission, 185 La. 729, 170 So. 548 (1936). The Company's position, then, is that the continued enforcement of the order of 1960 has caused and will continue to cause irreparable damage so long as the Commission does not grant an increase in those rates.

By affidavits and exhibits attached to their petition and by the testimony of witnesses before the Commission the Company established the history of the extraordinary growth in the economy of the Nation and the State during the 1960's. As a result there has been an unusual demand for telecommunication services. These demands persist from business and industry in both rural and urban areas. Large outlays for construction of needed facilities are urgently required and capital funds must be obtained for this purpose.

In 1960 the cost of capital was approximately 4.9 percent. In contrast, the cost in late 1969 was above 8 percent and as high as 9.20 percent. This, together with increased operating expense and inflation and the need for expanded facilities, has brought about a decline in the Company's rate of return for the first half of 1969 to a level of 5.87 percent on an average net investment of $401,316,224, the lowest level in 10 years, a rate of return significantly below the current cost of capital, and significantly below the 6 percent deemed to be necessary to prevent confiscation in our 1960 decision. 239 La. 175, 118 So.2d 372.

The situation has worsened since the first half of 1969. There is danger, therefore, if the rate of return is not increased immediately investors will turn to other investment opportunities; and, more importantly, the Company's inability to provide the needed improvements will deprive the public of the service to which it is entitled. Present earnings of the Company will not justify the expenditure of the vast sums required to meet the needs in this State.

Witnesses familiar with utility financing testified that a rate of return of 8 to 9 percent is required to remedy the situation. This would amount to a $24,000,000 increase in revenues which the Company is requesting, which will provide an 8.5 percent rate of return on average net investment. The proposed schedule of rates

filed with the Commission and the Court on December 15, 1969 will produce this additional revenue.

No effort has been made by the Commission thus far in these proceedings or in the proceedings being carried on before that body to contradict these findings. Indeed, it would be difficult to do so. Rates of interest on borrowed money, according to information obtained by the experts, is the highest since 1697. In Louisiana total personal income was up 80 percent during the period 1960–1968; whereas it was up 69 percent in the Nation as a whole. Wages for nonagricultural employees in the same period were up 32 percent in Louisiana. A total increase of 51 percent occurred in the number of phones the Company owned and serviced in the same period in this State. Average daily local calls on all phones increased 39 percent for the same eight year period.

These eight years saw a 92 percent increase of long distance messages in Louisiana. The U.S. consumer price index rose 19 percent in the period and construction costs were up 29 percent. All of the data accumulated in the record is to the same effect, illustrating graphically the dramatic upturn of costs, expenditures, taxes and wages since the rates established in 1960. The facts are, of course, common knowledge among well informed average citizens.

. Recognizing this marked transition in our national economy, the regulatory bodies of other states have allowed a rate increase which would permit the companies affected to adjust to the change. New York allowed an 8.15 percent rate of return on net .average investment on February 11, 1970 (Proceedings as to Rates, Charges, etc. of the New York Telephone Co., Case 25155, N.Y.P.S.C. Order Adopted February 11, 1970). Rhode Island granted a 7.4 to 7.65 percent rate of return on original cost of plant on February 10, 1970 (In Re Tariff Filing by New England Telephone and Telegraph Co., Docket No. 1024, R.I.P.U.C. Order entered February 10, 1970). Rates designed to yield a rate of return on average net original cost of 7.6 percent were approved by the Public Utility Commission of Oregon on December 22, 1969 (See Order No. 46501 In the Matter of Suspension of Tariffs, filed under Advice No. 250, of Pacific Northwest Bell Telephone Company).

A 7.65 percent rate of return on the fair value of the company property was allowed by Maryland on November 19, 1969. (In the matter of the Application of the Chesapeake and Potomac Telephone Company of Maryland, etc., Case No. 6233). Rates which would not in themselves prevent earning on net average investment in the range of 8 to 8.5 percent were approved by the Federal Communications Commission on November 5, 1969 on Bell System Inter-

state Rates. Rates which would produce returns varying from 7.4 to 8 percent on cost were approved in five other states since July 1969.

All factors considered, I am convinced that an adjustment in the 1960 rates are imperative.

Granting this injunction upon proper bond will neither infringe the Commission's statutory authority nor cause injury to the users of the Company's intrastate telephone service. The Commission will still be free to proceed and perform its duty of fixing just and reasonable rates; and the bond will fully protect users and insure proper refund to them in the event the Commission should finally fix a rate which is lower than the rate approved on an interim basis. Southern Bell Telephone and Telegraph Co. v. Railroad and Public Utilities Commission, 76 P.U.R.(N.S.) 101.

On the basis of the affidavits, testimony and exhibits, we would not undertake to decide what the Company will eventually be entitled to, only what it will collect temporarily until the rates are determined. Since there is nothing from the Commission to the contrary, the Court must be guided almost entirely by the Company's offerings. They have succeeded in making a prima facie case for an increase, and the majority overturns that showing on no evidence.

Hearing was not held before the Commission on the interim rate increase until after this suit for injunction was filed on January 22, 1970 and after a hearing on the injunction before the District Court on February 2, 1970. It is not required, therefore, as the Commission contends, that the Company abandon its suit in order to appeal the Commission order issued on February 13, 1970. This would only involve additional delay in a proceeding in which the Company had already charged that the Commission is "dragging its feet".

Nor do I think it necessary, as the Commission contends, that the Company should first apply to the Court of Appeal, First Circuit before applying here for writs.

The Courts of Appeal are not involved in matters which concern orders of the Public Service Commission. The Constitution provides that in matters involving Commission orders appeals from decisions of the trial court shall be direct to the Supreme Court. La.Const. art. 7 § 10(3). It follows that if the Court of Appeal has no appellate jurisdiction it has no supervisory jurisdiction for the Constitution limits the supervisory jurisdiction of the Courts of Appeal to matters over which it has appellate jurisdiction; viz.,

Each court of appeal has supervisory jurisdiction, subject to the general supervisory jurisdiction of the Supreme Court, over all inferior courts in all cases in which an appeal would lie to the court of appeal. La.Const. art. 7 § 29.

In addition to the provision of the Constitution conferring appellate jurisdiction on the Supreme Court in all "Cases in which orders of the Public Service Commission are in contest, as is provided in Article VI, Section 5 of this Constitution * * *." La.Const. art. 7 § 10, the Supreme Court has "general supervisory jurisdiction over all inferior courts." La. Const. art. 7 § 10. I entertain no doubt that the application for writs was properly lodged here.

On the basis of the data available, I am of the opinion that a schedule of rates may be imposed effective immediately which will assure to the Company a rate of return not exceeding 7.5 percent on the Company's net average investment in Louisiana; with a bond in the sum of $20,-000,000 conditioned in the form and manner proposed by the Company with a good and solvent surety authorized to do business in the State of Louisiana; and that the Commission should be enjoined from enforcing the 1960 rates or from interfering with imposition of the revised schedule.

Since injunctive process is permissible under these circumstances, the exceptions filed by the Commission, based upon the contention that the Company was not observing the procedure prescribed by statute in these cases, are without merit, and the majority commits error when it denies this relief and refuses to answer the issues presented.

I respectfully dissent.

HAMLIN, J., also dissents for the reasons assigned by SUMMERS, J.

FOURNET, Chief Justice (dissenting).

During consultation on June 4, 1970, I stated I concurred in the results reached by the majority opinion in this case, and would assign written reasons therefor. However, after carefully reviewing the record and briefs, I am convinced the view I had originally entertained is correct, and that plaintiff is entitled to the relief sought. In my humble opinion, the dissenting opinion of Mr. Justice SUMMERS bears me out in this conclusion; hence I am concurring in the views expressed in his dissent.

FOURNET, C. J., and HAMLIN and SUMMERS, JJ., are of the opinion a rehearing should be granted.