272 So.2d 667 (1973)
SOUTH CENTRAL BELL TELEPHONE CO.
v.
LOUISIANA PUBLIC SERVICE COMMISSION.
No. 52794.
Supreme Court of Louisiana.
January 15, 1973.
Dissenting Opinion January 19, 1973.
Rehearing Denied February 19, 1973.
Calvin E. Hardin, Jr., Baton Rouge, James D. Sparks, Monroe, Harvey Peltier, James W. Hammett, New Orleans, W. M. Booker, Jr.; Breazeale, Sachse & Wilson, Victor A. Sachse, III and Victor A. Sachse, Baton Rouge, for plaintiff-relator.
Marshall B. Brinkley, Baton Rouge, for defendant-respondent.
SANDERS, Justice.
South Central Bell Telephone Company is a public utility, providing telephone service in Louisiana. As such, its rates are subject to the control of the Louisiana Public Service Commission.
On June 11, 1971, the Nineteenth Judicial District Court for the Parish of East Baton Rouge granted South Central Bell a rate increase to 7.925 per cent on the average net investment devoted to intrastate telephone service. The judgment was not appealed. South Central Bell then filed tariffs, or rate schedules, with the Commission to implement the rate increase. These were approved by the Commission in July, 1971.
On December 17, 1971, Bell applied for another rate increase by filing an appropriate petition, Docket No. 11,048, with the Louisiana Public Service Commission. This petition sought a return of 9.5 per cent. The evidence has now been heard, and the case has been submitted to the Commission for a decision.
*668 Twelve days after filing the above petition, Bell filed a second petition, Docket No. 11,062. This second petition alleged that operating costs had drastically increased and that a new rate schedule was necessary in order to realize the 7.925 per cent earnings already approved by the 1971 court judgment.
The Commission determined that it would not proceed to allow a tariff increase without exploring the relevant evidence and that it would do so within the framework of the "general rate" case then pending (Docket No. 11,048). Although phrased in terms of a dismissal, the order in effect consolidated the issues. As the Commission put it:
"The Company's reasoning that the Court has bound this Commission ad infinitum to automatic rate increases `pursuant to the judgment of Court of June 11, 1971.', without hearings, without test of the applicability of the principles and methods used in developing the data, without the benefit of cross examination and intervention by other parties, offends elementary principles of justice and due process. It is absolutely essential that this Commission perform extensive further analysis of the Company's presentation. This is immediately apparent from even a superficial review of the material furnished in support of the interim increase ...
"On further examination, we discover that South Central is anticipating an increase of almost 16% in its operating expenses before taxes in 1972 which it is made to appear will apparently be accompanied by increases in revenues of only 8%. Suffice it to say that we are not convinced by the unilateral and self-serving Company presentation in this proceeding. In the course of Docket No. 11048, the Company will be required to explain in detail its current inability to keep expenses in line with the growth in customer service requirements, and to describe what extraordinary action it has taken to curb this devastating trend in expenses. Until the Company has made such showings to the satisfaction of the Commission, we would be remiss under our obligation to the consumers of this state, were we to grant the company any portion of its proposed rate increase."
Treating this order as a denial of relief, Bell appealed to the Nineteenth Judicial District Court. On July 18, 1972, that Court, in written reasons for judgment, ruled as follows:
"This Court commented at the hearing that South Central Bell Telephone Company was entitled to a hearing before the Louisiana Public Service Commission on the matters presented herein. The Court is now satisfied that the Louisiana Public Service Commission fully intends to explore in depth the matter of additional expenses claimed by South Central Bell."
South Central Bell has now appealed to this Court.
The petition at issue in this case is sometimes referred to as a "make whole" petition. In essence, however, it seeks interim relief prior to the decision in the general rate case, now under advisement by the Commission.
Whether South Central Bell seeks an adversary hearing on the petition is unclear. In its brief, the Utility states:
"But to reject the application without a hearing is not the proper performance of the function of the commission save only, as in this case, where a hearing would serve no useful purpose." (Italics ours.)
Assuming, however, that such a hearing is sought, we hold that the consolidation of the issues raised in the second petition with the general rate case is neither arbitrary nor capricious. Such an order falls well within the discretionary authority of the Commission to regulate its own procedures.
*669 The main thrust of the arguments in this Court is toward securing an immediate rate increase to avoid unconstitutional confiscation. South Central Bell strongly urges this Court to grant a rate increase, before the decision of the Louisiana Public Service Commission, based upon the affidavits and other submissions attached to the petition.
Such a plea for a rate increase without the normal hearing brings the case within the ambit of our decision in South Cen. Bell Tel. Co. v. Louisiana Pub. Serv. Com'n, 256 La. 497, 236 So. 813 (1970). There, this Court held that a return of 5.87 per cent was non-confiscatory, stating:
"Under Article 6, Sections 3-9, of the Constitution of Louisiana the Public Service Commission has exclusive jurisdiction in the first instance to fix or change any rate to be charged by a public utility, and the courts are without power to fix or change rates until that Commission has acted. Nevertheless, a violation of constitutional rights, such as confiscation of property, would require a court to exercise the necessary authority to grant relief from the constitutional abuse.
"The Company's contention, simply stated, is that, principally because of the increased cost for acquisition of capital, present rates and charges for services yield a rate of return so inadequate as to be confiscatory, and that it must be allowed an immediate rate increase.
"Admittedly, the Company in the first half of 1969 received a rate of return of 5.87 per cent on its average net investment. The record shows that the Company sold an issue of debt capital at a cost of 8.53 per cent in November, 1969. However, a simple comparison of these two rates is not decisive of the legal question before us.
"We need not, indeed we cannot, determine what are valid permanent rates and charges. We can determine only whether a continued imposition of present tariffs would constitute confiscation of the Company's property. Although it may be that the Company should receive a higher rate of return on its investment and is entitled to have the Commission fix rates and charges which will produce such a return, the record does not justify a finding that the present rate of return is so inadequate as to be confiscatory....
"We reiterate: We are not here concerned with a determination of reasonable telephone rates and charges or with a valid yield of return on the Company's investment for its operations. We pass only upon the question of whether the Commission's action or inaction amounts to a constitutional violationthat is, confiscation of the Company's property. We hold that the Company has failed to establish that the Commission's enforcement of present rates is tantamount to confiscation.
In the present case, South Central Bell concedes that it realized a rate of return of 7.40 per cent in 1971. For 1972, the projected rate of return is 6.33 per cent. We likewise hold that these rates are non-confiscatory. We, of course, express no opinion as to the merits of the pending petition for a rate increase.
The Louisiana Public Service Commission now has the general rate case under advisement. The entire telephone rate structure, including the matters raised in the present case, are under review. We find no adequate reason for disturbing the orderly procedures of the Louisiana Public Service Commission, as it discharges its constitutional duty of regulating utility rates in Louisiana.
For the reasons assigned, the judgment of the district court is affirmed, at appellant's costs.
*670 SUMMERS, J., dissents and assigns reasons.
BARHAM, J., dissents with written reasons.
BARHAM, Justice (dissenting).
The majority in my opinion has missed the thrust of the case under consideration. It believes as a matter of fact that the rates now in effect are non-confiscatory, and that therefore there is nothing for us to review. South Central Bell Telephone Company was granted a 7.925 per cent return on the average net investment on June 11, 1971, after a lengthy hearing resulting in a voluminous record. Tariff and rate schedules to implement the rate increase were presented to and approved by the Commission in July, 1971. The evidence contained in the records of the hearing for an increase on investment return and of the hearing fixing tariffs and rates is a part of the evidence upon which South Central Bell now bases the particular application before us. That application seeks only to adjust the rates and tariffs so that the rate of return previously awarded may in fact be received. The evidence in the prior hearing, as well as the evidence contained in the affidavit attached to the new application, is sufficient for a determination of the proper rates and tariffs to effect in actuality the rate of return on investment to which the company is entitled.
The Public Service Commission drags its feet in this matter as it did in the previous proceedings which were before us. I primarily would resolve the issue before us on the basis that there is great abuse by the Commission in delaying action on the plaintiff's petition for rate and tariff increases and in consolidating that application with another unrelated application (such consolidation is not permitted by the Commission's rules). However, I am also convinced that under the facts and circumstances presented to us the action of the Public Service Commission amounts to confiscation. A simple mathematical calculation can determine the tariffs and rates which will yield the court-ordered return on the investment of 7.925 per cent. The evidence is available for making the calculation. If the calculation is not made and adjustments not put into effect, the telephone company loses the property rights which the court has awarded it each month in which tariffs and rates fail to yield the proper rate of return. The evidence before us already supports the fact that for more than a year there has been a loss of revenue which can never be regained. It is this court's obligation under these circumstances to fix tariffs and rates which will, at least now, begin yielding the rate of return to which the company is entitled. The failure of the Public Service Commission to act amounts to confiscation of the plaintiff's property rights.
I respectfully dissent.
SUMMERS, Justice (dissenting).
The relief sought in this appeal by South Central Bell Telephone Company had its origin in an application to the Public Service Commission filed December 28, 1968. The application and supplements now before the Court ultimately sought an increase in rates calculated to bring 9 percent rate of return on the company's Louisiana investment. Increased revenues of $24,600,000 were expected to be realized from the requested rate of return.
The proceedings before the commission became protracted and fraught by many delays, principally those imposed by the commission. Due to the urgency of the matter and because the company was not earning the rate of return which this Court found to be fair in 1960, resort was had to the courts. These latter proceedings sought an interim increase in rates which were calculated to earn a sufficient rate of return to meet that considered fair in 1960; sufficient also to prevent further confiscation of the company's property.
*671 In an adjudication in this Court on June 29, 1970 the interim relief was denied by a four to three decision. South Central Bell Telephone Company v. Louisiana Public Service Commission, 256 La. 497, 236 So. 2d 813 (1970). On July 31, 1970 the company filed a fourth supplemental application revising its required rate of return to 9 percent. Finally, on November 13, 1970 the commission fixed a rate of return of 7.75 percent, which, when applied to the rate base fixed by the commission, produced increased revenues of $9,100,000 instead of the $24,600,000 originally applied for.
Tariffs were filed by the company to implement the newly established rate of return, and the commission's order was appealed to the district court where an increase was granted. The Court observed that the commission, using a formula based upon a 50 percent debt ratio, 6 percent cost of debt, and 9.5 percent cost of equity, arrived at its stated 7.75 percent rate of return. Tariffs were adjusted by the commission in accord therewith balanced against determined expenses. The court further agreed that the company's contention was well-founded that the actual rate of return allowed was 7.23 percent: "By disallowing the actual income tax expense and by adjusting the hypothetical debt ratio to 50 percent (errors found by this [the] Court to have been committed) the Commission's result became fictitious."
By adjusting the formula to a 45 percent debt ratio, while utilizing the same factors for debt and equity, the results were altered to 7.925 percent. With this finding the Court determined that the disparity between approximately 7.23 percent and 7.925 percent was substantial. Deprivation of this differential in the rate of return by the commission imposed unjust rates. The result was an abuse of power by the commission. Adjustment of rates to conform with the Court's findings was ordered on May 24, 1971. 90 PUR 3d 69 (1971).
No appeal was taken from this decision. Tariffs filed by the company and approved by the commission to implement those findings were made effective in July 1971. No appeal was taken by the company, it is alleged, because of its desperate need for at least the partial increase the Court results afforded. It further represents that, based upon the delays involved in the commission and Court decisions and the fact that increased rates could not be made retroactive, the company has suffered an irretrievable loss of $28 million or approximately $13 million after taxes.
Thereafter, in December 1971, the company applied to the commission to approve revised tariffs for intrastate telephone rates and charges which would permit the company to earn a rate of return of 7.925 percent in keeping with the judgment of the district court. It alleged that the rates made effective in July 1971 to implement the Court's order did not produce the 7.925 percent rate of return found by the Court to be reasonable and just. For this reason, it alleged, the rates of July 1971 resulted in a taking of the company's property without due process of law in violation of Article I, Section 2, of the Constitution of Louisiana and the Fourteenth Amendment to the Constitution of the United States. All allegations in this and supplemental petitions were supported by sworn statements, computations and estimates attached to the petition.
Proposed tariffs were submitted with the application which would produce the approved rate of return. In the original and supplemental applications several reasons were assigned for the failure of the tariffs made effective in July 1971 to produce the approved rate of return. Among these was the claim that expenses have greatly increased and operating results for the twelve months ending December 31, 1971 would end in a revenue deficiency of $5,895,000, a rate of return of 7.31 percent; and for the year ending December 31, 1972 would bring about a revenue deficiency of $17,382,000, a rate of return of 6.2 percent.
*672 In a supplemental application, based upon actual experience, it was set forth that the year's operation ending December 31, 1971 had shown a revenue deficiency of $4,996,000, a rate of return of 7.40 percent. For the year 1972 the figures were revised to show a rate of return of 6.27 percent and a revenue deficiency of $17,493,000.
These changes in the additional revenue required to bring the company's rate of return to 7.925 percent were alleged to be caused by: (1) revenue requirements originally calculated utilizing depreciation rates which the Federal Communications Commission advised would not be approved for 1971; (2) the revision in the investment tax credit selection option, and (3) a decision by the commission that certain settlement expenses with independent telephone companies would not be allowed for ratemaking purposes. All these facts were readily ascertainable, in fact known to the commission.
Despite the fact that it offered no evidence to support its charge, the commission was unable to agree with the company's representation and proof, finding it "incredible" that the company's rate of return was only 7.40 percent in 1971 when the company filed rates designed to produce 7.925 percent; nor could it agree that the anticipated return for 1972 would not exceed 6.27 percent.
Although there was no evidence to support the commission's conclusion, it found that in the course of another pending proceeding in which the company was requesting an increase in its rate of return to 9½ percent, the company would be required to explain in detail its current inability to keep expenses in line with the growth in customer service requirements, and it would further be required to disclose the action it had taken to curb the devastating trend in expenses. The company's petition for an immediate increase in rates was denied.
In an appeal to the Nineteenth Judicial District Court additional evidence was submitted by the company. There the company established that the composite cost of debt was no less at the time of the trial (May 30, 1972) than it had been on May 24, 1971 when the court found the company entitled to a 7.925 percent rate of return. On May 25, 1972 a rate of return of 8.72 percent was fixed by the Tennessee Commission for the telephone company there. The rate was based upon the average net investment, the same base used in Louisiana. The same capital structure utilized in Louisiana was also used by Tennessee. The Mississippi Commission had also recently approved a rate of return exceeding 8 percent on the same rate base used in Louisiana. This latter rate of return fixed by the Mississippi Commission was based upon a future test period, a practice adopted by at least a dozen states. Florida fixed a rate of return of 8.23 percent in January 1972. In December 1971 an 8.90 percent rate of return was established in South Carolina. Oregon fixed 8.60 percent on December 31, 1971, and New York approved an 8.23 percent rate of return in January 1972. Massachusetts and Rhode Island also fixed rates of return of 8.82 percent and 8.38 percent, respectively, in January and May.
Anticipating the 7.925 percent rate of return established by the court in May 1971 would be realized, the company had stepped up its construction program from $78,000,000 to $88,000,000 in 1971. In 1972 it was increased to $121,000,000 in an effort to meet the continuing demand for service to the public. In addition, negotiated wage settlements increased the company's operating costs. Operation expense increased because of rising depreciation expense, handling the increased volume of business and increased inward movement, installation of telephones to fill needs of new customers and the pronounced inflation in all sectors of the economy.
It was also established that if the tariff proposals of the company were approved and later found to be excessive, the company was in a position to make refunds to customers and subscribers. The company *673 offered to furnish bond to support this result.
Revised estimates at the time of the trial indicated the rate of return for 1972 would be 6.33 percent. This is the same basic data presented in the pending case to which the commission has relegated these proceedings.
The commission offered no countervailing proof.
In July 1972 the district court rendered its judgment affirming the order of the commission. The trial judge was of the opinion that the evidence offered in his court under a proffer of proof was improper and it was not considered, for the commission had held no hearing on the company's application. Moreover, he felt the matter would be fully explored in the separate pending proceeding in which the company was seeking a 9½ percent rate of return.
In my view the majority of this Court has improperly sustained the trial court judgment. The effect of the commission order and the trial court judgment is to further delay the redress sought by the company, delays which result in continuing losses, according to this record. These losses are irretrievable.
It was error, also, for the trial judge to refuse to consider the evidence presented in his court upon the assumption that no hearing had been held before the commission. The applications presented to the commission and the affidavits, estimates and rates accompanying these applications were reviewed by the commission's expert. Moreover, in considering that evidence the commission found it to be "incredible" without any evidence in the record to support their finding.
In my view the order issued by the commission was arbitrary and capricious. Instead of fixing a hearing on the applications before it, if further evidence was required, the commission referred the matter to another proceeding. Thus the company's plea for immediate relief under an already established rate of return was transferred into another proceeding where a different rate of return was being considered. These are two totally disparate problems. In the meantime, insofar as this record is concerned, the company had suffered a loss of $4,996,000 in 1971, or the difference between a rate of return of 7.40 percent and 7.925 percent. The loss in 1972 would be greater. In effect, the commission refused to consider the evidence before it, just as the trial judge refused to do.
Louisiana courts are especially vested with authority and jurisdiction to correct orders of the commission by Article VI, Section 5, of the Constitution:
"... Any party in interest may appeal from orders and decrees of the Commission to the courts by filing suit, within ninety days from the date of the Commission's order, and not thereafter, against the Commission at its domicile...."
Section 1192 of Title 45 of the Revised Statutes further provides that "The court may affirm the order of the Commission complained of, or it may change, modify, alter, or set it aside, as justice may require."
To say that when the commission refuses to contradict the evidence submitted by the applicant, the applicant can receive no relief from the courts is to deny the authority of the courts to review negative orders of the commission in which it perfunctorily denies relief.
In my view the commission's order referring this application to another proceeding was improper and this action compounded the delays which have plagued the company depriving it of the fair return the law assures it. The result is confiscation.
This Court has consistently applied the test announced in Federal Power Commission v. Hope Natural Gas Company, 320 *674 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944):
... the return to the equity owner should be commensurate with returns on investments in other enterprises having corresponding risks. That return, moreover, should be sufficient to assure confidence in the financial integrity of the enterprise, so as to maintain its credit and to attract capital.
The basic test of confiscation reprobated by the constitution was reaffirmed in Permian Basin Area Rate Cases, 390 U.S. 747, 792, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968): Unless all reasonable expenses are satisfied there is no return to the investor. The commission must, moreover, see to it that the amount after expenses remaining for the investor can "reasonably be expected to maintain financial integrity, attract necessary capital, and fairly compensate investors for the risks they have assumed, and yet provide appropriate protection to the relevant public interests, both existing and foreseeable."
In the absence of such returns there is confiscation. For it is fundamental in our law that the company is entitled to reasonable and just rates and charges to assure a fair rate of return on its investment. La. Const, art. 6 § 4.
Notwithstanding that the company is not yet operating at a loss, confiscation may nevertheless take place. In General Telephone Company v. City of Wellington, 156 Tex. 238, 294 S.W.2d 385, 389 (1956) the court said:
[T]he failure of telephone rates to produce a fair return on the fair value of the properties of the exchange in question was an enjoinable violation of constitutional guarantees, although there was no "confiscation" in the sense of an out-of-pocket loss ...
... Economic values exist largely in relation to other economic values. If the going rate for labor be $2 per hour, and a given laborer be prohibited by law from charging over 20 cents per hour, is he any less a slave because he manages to subsist on his 20 cents?
See also Smith v. Illinois Bell Telephone Co., 270 U.S. 587, 46 S.Ct. 408, 70 L.Ed. 747 (1926); Lincoln Gas Co. v. Lincoln, 250 U.S. 256, 39 S.Ct. 454, 63 L.Ed. 968 (1919); New England Telephone & Telegraph Co. v. Department of Public Utilities, 275 N.E.2d 493 (Mass.1971); In re Northwestern Bell Telephone Co., 73 S.D. 370, 43 N.W.2d 553 (1950); Southern Bell Tel. & Tel. Co. v. Louisiana Public Service Commission, 183 La. 741, 164 So. 786 (1935).
The commission's principal objection seems to be that allowing a change in tariff on this application will set an unfavorable precedent in future cases. Clearly this is not a valid basis for denying relief. It is the merit of this application and the evidence relevant to this case which should influence the commission's orders. No binding precedent results from a commission order. Nothing in the law binds the commission in subsequent cases by action taken in others. The facts of each case are controlling. Thus the commission's concern about the effect of precedent in future cases is unfounded.
The order of the commission and the judgment of the trial court should be reversed and the proposed tariffs should immediately be placed in effect, with a sufficient bond furnished by the company in the event early subsequent investigation should establish that the data furnished by the company is erroneous. Under such a decree no harm will result to the subscriber or the company.
I respectfully dissent.