In the Matter of Bartley MICKLER, Debtor.

Bartley MICKLER and Elaine Mickler, Plaintiff,

v.

MARANATHA REALTY ASSOCIATES, INC. and Stanley E. Kreimer, Defendants.

No. 80–1226.
Adv. No. 81–92.

United States Bankruptcy Court, M. D. Florida, Tampa Division.

May 3, 1982.

---

Don M. Stichter, Tampa, Fla., for plaintiff.

Neil Butler, Tallahassee, Fla., for defendants.

## ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THIS IS an adversary proceeding and the matter under consideration is a Motion for Partial Summary Judgment filed by Maranatha Realty Associates, Inc. (Maranatha) and Stanley E. Kreimer (Kreimer), the Defendants and Counter-Plaintiffs in this action. The Plaintiffs and Counter-Defendants, Bartley L. and Elaine Mickler, are the Debtors who filed their petition for relief under Chapter 11 of the Bankruptcy Code on August 20, 1980.

The undisputed facts which control the matter under consideration can be summarized as follows:

On January 31, 1979, Maranatha and Kreimer, as lenders, and the Micklers, as borrowers, entered into an interstate loan agreement whereby certain funds would be advanced as seed money to assist in the proposed development of a shopping center and dinner theater in Pasco County, Florida, upon land owned by the Micklers. The transaction included the execution of a promissory note and a mortgage by the Micklers. The note recited an interest rate of 12% on a principal amount of $400,000. The mortgage encumbered the Micklers' substantial land holdings in Pasco County. Although the exact amount of acreage encumbered is hotly disputed, the determination of this issue is not germane to the matters presently under consideration and, therefore, must await the outcome of litigation.

During the preliminary negotiations, the lenders, upon the advice of their counsel, decided that Florida law should control the terms of the note. To effectuate this intention the lenders' Georgia counsel, who drafted all of the necessary loan documents, included in paragraph four of the promissory note the following language:

"This note is to be construed and enforced according to the laws of the State of Florida."

There is no question that the terms of the loan agreement were not the result of arm-length negotiations between the parties and that the documents were prepared solely by counsel for the lenders after a brief discussion with the Florida counsel for the borrowers.

In addition to the express designation of Florida law by the loan agreement, the following undisputed facts appear from the record which are relevant to the matters under consideration. The initial transaction and negotiations for the loan agreement in question were conducted in Georgia which is also the principal place of business of Maranatha and Kreimer. The Debtors reside in Florida and the property involved in this controversy, that is, the land encumbered by the mortgage, is located in the State of Florida. The project envisioned by the parties, i.e. the construction of a shopping center and a dinner theater, was to be located in the state of Florida. Although,

as noted, the Debtors are residents of Florida, the loan agreement was executed by them in North Carolina during one of their frequent sojourns in that state.

The threshhold issue for this Court's determination involves a choice of law question in the context of this interstate loan agreement. Under the law of Georgia, *Ga. Code Ann. § 57–119 (1969)*, the interest rate of 12% provided for in the promissory note is not usurious since that state places no restriction on the amount of interest which may be paid on any loan of $100,000 or more. Whether the specified interest rate of 12% is usurious under Florida law is a more difficult question. If the contractual rate of interest is governed by the Florida Statute in effect at the time the loan documents were executed, it is clearly usurious since the maximum allowable rate of interest at that time was 10%. See, *Fla. Stat. 687.03(1) (1977)*. However, this statutory section was amended in 1979 and the permissible interest rate is currently 18%. 1979 Fla.Laws Ch. 79–274. Thus, if this change in the law applies retroactively, an issue to be discussed infra, then the interest rate set forth in the note is not prohibited by Florida law. Yet, even assuming for the moment that the 18% rate should be applied retroactively, this still does not settle the issue since the Plaintiffs have alleged that a substantial portion of the consideration furnished by the lenders was in effect disguised interest and that the interest rate, in any event, exceeds 18%. See e.g. *American Acceptance Corp. v. Schoenthales*, 391 F.2d 64 (5th Cir. 1968). Therefore, depending upon the issue of retroactivity, discussed below, and the proof to be presented at trial concerning the de facto rate of interest, there may be no conflict between the respective laws of Florida and Georgia. With these facts and principles in mind, this Court must initially decide which state's law applies.

In the recent case of *Continental Mortgage Investors v. Sailboat Key, Inc.*, 395 So.2d 507 (1981), the Supreme Court of Florida was confronted with a similar, but not an identical, question. There, the parties entered into an interstate loan agreement which contained a choice of law provision designating the application of a foreign law (Massachusetts) which would validate the contractual interest rate, while under the law of Florida the interest rate would be usurious. Chief Justice Sundberg stated the rule:

"We conclude that in an interstate commercial loan transaction with which several states have contacts and in which usury is implicated, *Florida courts will recognize a choice of law provision provided by the parties* so long as the jurisdiction chosen in the contract has a normal relationship with the transaction." at p. 508. (emphasis supplied)

As the Chief Justice noted, the historical rule at play here is the principle of validation. That is, the parties contract with a view toward the validity of the contract and its provisions. Therefore, to the extent the Courts uphold the parties express designation of the validating law, the expectations of the parties are fulfilled. The difference, however, between *Continental Mortgage Investors, supra*, and the case, sub judice, is that, here, the parties have expressly designated the law of the forum (Florida) whose usury law, at least at the time of contracting, prohibited the rate of interest provided for in the note. Stated another way, the parties expressly designated a choice of law which is at odds with their expectations of contractual validity.

Counsel for the defendants strenuously urges the application of Georgia law since Georgia has a normal relationship with the transaction and for the obvious reason that the law of that state would permit interest at the rate of 12%. However, one glaring fact militates against the application of Georgia law. As stated earlier, all of the loan documents, including the promissory note with its express designation of Florida law, were prepared by the Defendants' Georgia counsel. The mere fact that the Defendants' Georgia attorney failed to apprise himself and his clients of controlling Florida law cannot change the lenders' unambiguous expression of Florida law in the promissory note. Therefore, considering

the fact that Florida is the situs of the subject real property and the residence of the debtors together with the express choice of Florida law by the lenders, this Court is satisfied that Florida has a normal relationship with the transaction and, therefore, its law controls this controversy. *Continental Mortgage, supra.*

The second question presented for this Court's determination is whether the 1979 amendment to Fla.Stat. § 687.03(1) should be given retroactive effect. The 1977 version of this statutory section, which was in effect at the time the loan agreements under consideration were executed, provided as follows:

"It shall be usury and unlawful for any person or for any agent, officer or other representative of any person, to reserve, charge or take for any loan, or for any advance of money, or for forbearance to enforce the collection of any sum of money, except upon an obligation of a corporation, a rate of interest greater than 10% per annum, either directly or indirectly, by way of commission for advances, discounts, exchange, or by any contract, contrivance or device whatever, whereby the debtor is required or obligated to pay a sum of money greater than the actual principal sum received, together with interest at the rate of 10% ... " Fla.Stat. § 687.03(1) (1977).

In 1979, the legislature increased the maximum rate of interest from 10% to 18%. 1979 Fla.Laws, Ch. 79–274. The effective date of this act was July 1, 1979 and as mentioned earlier, the parties entered into the loan agreement on January 31, 1979. The general rule is that usury statutes are concerned with remedies and not substantive rights. Therefore, increases in statutory interest limitations apply retroactively unless a contrary intention is expressed by the legislature. *Tel Service Co., Inc. v. General Capital Corporation,* 272 So.2d 667 (Fla.1969). Indeed, a contrary intention was expressed in Section 15 of the 1979 act which provided:

"This act shall apply only to loans or advances of credit made on or subsequent to the effective date of this act and shall not be construed as diminishing the force

and effect of any laws applying to loans or advances of credit completed prior to that date." 1979 Fla.Laws, Ch. 79–274, § 15.

However, on December 13, 1979, the applicability of this prospective application clause was redefined by amendment and codified as subsection (5) in Fla.Stat. § 687.03 (Supp.1982) which now reads:

"As amended by Chapter 79–592, Laws of Florida Chapter 79–274, Laws of Florida, which amended subsection (1);

(a) Shall apply to loans, advances of credit or lines of credit made on or subsequent to July 1, 1979, and to loan advances of credit, or lines of credit made prior to that date *if the lender has the legal right to require full payment* or to adjust or modify the interest rate, by renewal, assumption, reaffirmation, contract or otherwise; and

(b) shall not be construed as diminishing the force and effect of any laws applying to loans, advances of credit, or lines of credit, other than to those mentioned in paragraph (a), completed prior to July 1, 1979." (emphasis supplied)

This amendment provides that it shall operate retroactively to July 1, 1979.

The November 27, 1979 Senate Staff Analysis and Economic Impact Statement expressed the underlying purpose of the amendment which, in pertinent part, provides as follows:

"II. Economic Impact and Fiscal Note
A. Public

The effects of the current law have caused additional expenses for lenders as well as borrowers. Section 201.09, Florida Statutes does not require documentary stamps for renewals *since they are deemed to be merely a continuation of an existing indebtedness.* However, the statute does require such stamps for a new loan. Due to the increase in interest rates, lenders are not renewing loans at the old lower interest rates, but must make new ones to gain the increased yield.

In addition, Section 15 has caused the same effect for any loan made prior to July 1, 1979 where the lender has the

legal right by contract to require full payment or to adjust the interest rate. To get the higher rate, the *lender is forced to call in the old loan and make a new one with the attendant extra expense to both the lender and borrower.*" (emphasis supplied)

Relying upon this amendment and the staff analysis, counsel for the lenders argues that inasmuch as the note matured on June 29, 1979, thereby entitling the lenders to full payment prior to July 1, 1979, that this note is embraced by the retroactive application clause and, therefore, the 18% maximum interest rate controls.

Counsel for the debtors argues that this amendment should be construed as referring only to existing acceleration clause provisions and not to obligations which have matured and are fully due and payable because, at some point in time, all pre-July 1, 1979 loans will mature and the lender will have the right to demand full payment. If that is the case, counsel contends, then the 18% interest rate would apply retroactively to all loans made before July 1, 1979 and, therefore, in any suit to collect a pre-July 1, 1979 note, the usury defense would be defeated and § 5(b) would be rendered meaningless. The upshot of this argument is that the phrase "if the lender has the legal right to demand full payment" is nothing more than a reference to acceleration clauses in loan agreements.

Concededly, the language of the amendment of December 13, 1979, is ambiguous. Although a literal reading might indicate that it was meant to apply to all pre-July 1, 1979 loans which had matured, regardless of when, this Court is satisfied that the Staff Analysis and Economic Impact Statement leaves no doubt that the amendment was designed to assist lenders who had a loan, not yet matured, but whose loan agreement had either an acceleration clause or a clause which gave the lender a right to modify the interest rate. As stated in the staff analysis, in order for a lender to take advantage of the higher interest in the absence of this amendment, the lender would be compelled to call in the old loan and to make a new loan with the attendant extra expenses both to the lender and the borrower. Thus, by virtue of the retroactive application of the amendment to outstanding loans with the clauses discussed above, a lender may take advantage of the increased interest rate without the necessity of calling the old loan and writing a new loan which, of course, would require documentary stamps. This is also the obvious and evident purpose of the amendment.

In light of the foregoing, this Court is satisfied that the adjusted rate of 18% does not apply retroactively to this loan transaction and this controversy is governed by the controlling interest rate of 10% per annum which was in effect prior to July 1, 1979.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Partial Summary Judgment filed by the above-captioned Defendants be, and the same hereby is, denied and final partial summary judgment be, and the same hereby is, entered in favor of the Plaintiffs, Bartley and Elaine Mickler; and, on the issue of choice of law, the loan transaction shall be governed by the laws of Florida as existed prior to July 1, 1979, to wit: the maximum allowable interest rate of 10% per annum shall govern this transaction.